JAMES MACCALUM PRINTING CO., Appellant, v. GRAPHITE COMPENDIUS CO., Respondent.

St. Louis Court of Appeals, July 12, 1910.

1. **CONTRACTS: Bilateral Contract: Consideration.** A contract binding a printer to print for an advertiser his first issue of an advertising catalogue of a specified number of copies, and binding the advertiser to pay a specified price per page for all new matter in the publication, and stipulating that, if the price of the printer be no higher than that of other responsible firms on the succeeding issues of the publication, the advertiser will give the work of publishing the same to the printer, is a bilateral contract, supported by a consideration moving from both parties, where the work entailed on the printer expense for material and services of competent persons to print the first issue, and where a part of the consideration for his agreement to print the first issue was the promise of the advertiser to award him the work of printing succeeding issues, though the printer did not bind himself to bid on the subsequent issues.

2. ——: ——: **Providing for Future Act.** A contract supported when made by a full consideration moving to both parties is not unilateral because one of the parties is accorded the privilege to do or not to do certain things in the future, if such party agrees to render a consideration for the privilege.

3. ———: **Perpetual Duration.** A contract unequivocally expressing the intention of the parties to confer a perpetuity of right or to impose a perpetuity of obligation is valid and enforceable, though the courts will construe a contract to impose an obligation of perpetuity only when its language compels that construction.

4. ———: **Indefiniteness: Construction.** If it is possible to do so, contracts should not be held too uncertain and indefinite for enforcement, and when the meaning of the terms of a contract is doubtful, it ought to be interpreted most strongly against the party seeking to enforce it, unless the other party prepared it.

5. ———: **Contract for Printing: Construction: Duration.** A contract employing a printer to print an advertising catalogue, which stipulates that, if the price of the printer be no higher than other responsible firms on "succeeding issues" of the publication, the advertiser will give the work of publishing the "succeeding issues" to the printer, does not confer an option on the printer to do the work of printing and binding every issue of the catalogue the advertiser might publish, for all time to come, but should be held to give the printer a right to be awarded the printing of two or more succeeding issues, where his bids for the work are as low as those of other responsible concerns.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

REVERSED AND REMANDED.

*Kinealy & Kinealy* for appellant.

(1) Parties *sui juris* have the right to make any contract which is not contrary to law or public policy and it is the duty of the courts to enforce contracts and not to be hypercritical to seek excuses for abrogating them. Schubach v. MacDonald, 179 Mo. 163; Meyer v. Christopher, 176 Mo. 580; Nicholson v. Acme Cement P. Co., 122 S. W. 773; Typewriter Co. v. Realty Co., 119 S. W. 403; Angelica Jacket Co. v. Angelica, 121 Mo. App. 226; Hauck Clothing Co. v. Sharpe, 83 Mo. App. 385. (2) The provision in the contract for publishing the 1905 issue of respondent's catalogue that if the price of ap-

pellant were no higher than that of other responsible. firms on succeeding issues of said publication gotten out by respondent that then respondent would give the work of publishing such succeeding issues to appellant is not void for want of mutuality. Laclede G. L. Co. v. Iron Wks., 169 Mo. 137; 21 Am. and Eng. Ency. Law, p. 928; 9 Cyc. 334; Williams v. Tiedmann, 6 Mo. App. 269; Reed v. Crane, 89 Mo. App. 670; Blount v. Connolly, 110 Mo. App. 603; Blackmore v. Boardman, 28 Mo. 420; Davis v. Petty, 147 Mo. 374; Lipscomb v. Adams, 193 Mo. 530; Montgomery v. Hundley, 205 Mo. 138; Elliott v. Delaney, 217 Mo. 14. (3) The contract is not void for uncertainty because of the use of the term "other responsible firms." 24 Am. and Eng. Ency. Law, p. 838; Arnot v. Alexander, 44 Mo. 25; Mullally v. Greenwood, 127 Mo. 138; Berthold v. St. L. Elect. Constr. Co., 165 Mo. 281; Gaunt v. Pries, 21 Mo. App. 540; Long v. Armsby Co., 43 Mo. App. 353; Machine Co. v. Hardware Co., 85 Mo. App. 175; Rhodes v. Land & Lumber Co., 105 Mo. App. 279; Typewriter Co. v. Realty Co., 119 S. W. 403. (4) Nor is the contract void because not limited to a specific number of future issues of the catalogue. Blackmore v. Boardman, 28 Mo. 420; Bruckman v. Dry Goods Co., 91 Mo. App. 454; Wiggins Ferry Co. v. Railroad, 73 Mo. 389. (5) Nor is the contract void as creating a monopoly. State ex rel. v. Associated Press, 159 Mo. 410.

*Ferriss, Zumbalen & Ferriss* for respondent.

(1) The alleged contract is lacking in mutuality, and is, therefore, unenforcible. Campbell v. American Handle Co., 117 Mo. App. 19; Agricultural Chemical Co. v. Kennedy, 103 Va. 171; Higbie v. Rust, 211 Ill. 333; Hoffman v. Maffiole, 104 Wis. 631; Cotton Oil Co. v. Kirk, 68 Fed. 791, 15 C. C. A. 540, and note on "Mutuality in Contracts;" Transportation Co. v. Bolt and Nut Co., 114 Fed. 77; Santaella & Co. v. Lange, 155 Fed. 719;

150 App.—25

Evans v. Peck-Hammond Co., 25 Ohio Circuit Court Reports 161. (2) The alleged contract is so vague, indefinite and uncertain in its terms that it is not enforcible. Lawson on Contracts, sec. 11; Burks v. Stam, 65 Mo. App. 455; Gelston v. Sigmund, 27 Md. 335; Delashmutt v. Thomas, 45 Md. 140; Evans v. Peck-Hammond Co., 25 Ohio Circuit Court Reports 161; Davie v. Mining Co., 93 Mich. 491. (3) The petition shows that the obligations, if any, imposed upon defendant by said contract have been complied with. Elderton v. Emmens, 4 C. B. 479; Perry v. Wheeler, 12 Bush (Ky.) 541; Sullivan v. Railroad (Mich.), 64 L. R. A. 673; Railroad v. Marshall, 136 U. S. 393; Jones v. Newport News & M. V. Co., 65 Fed. 736, 13 C. C. A. 95; Echols v. Railroad, 52 Miss. 610; Diffenderfer v. School Board, 120 Mo. 447.

A demurrer having been sustained to the following petition, plaintiff stood on the petition, refused to amend further, final judgment was given against him, and this appeal resulted.

"Plaintiff for amended petition states that it is and was at all the times herein mentioned a corporation organized under the laws of the State of Missouri, and engaged in the business, at the city of St. Louis, of engraving, lithographing, binding and printing all kinds of books, publications and other printed matter; that defendant is and was at all the times hereinafter mentioned, a corporation and engaged in the business of publishing what was called by it The Graphic Compendius Catalogue or American Consuls Reference List, which was a publication of advertising matter for business corporations, firms and individuals, setting forth the products of manufacture and commerce manufactured, dealt in or sold by them and which advertisements in defendant's said catalogue were set up in English and a large number of foreign languages and said catalogue when so published were and are by defendant distributed all over

the world for the information of intending foreign pur-
chasers of American goods and products; that on or
about the 29th day of June, 1905, plaintiff and defend-
ant entered into a contract whereby the plaintiff agreed
to print and bind for defendant the first issue of its
Graphic Compendius Catalogue, consisting of thirty-one
hundred and fifty copies of one hundred and fifty or
more pages each, and to do the work according to speci-
fications in said contract fully set forth; that in and by
said contract it was further contracted and agreed be-
tween the parties that upon the faithful performance of
said contract by plaintiff, the defendant should pay to
plaintiff the sum of $9.60 per page for all new matter
in said publication and that if the price of plaintiff was
no higher than that of other responsible firms on suc-
ceeding issues of said publication gotten out by the de-
fendant, that then the defendant would give the work
of publishing such succeeding issues to plaintiff.

Plaintiff further states that thereafter during the
early part of the year 1906, the defendant determined
to get out a second issue or series of its said Graphic
Compendius Catalogue and plaintiff's price for doing
said work being no higher than that of other responsible
firms therefor, the said work was awarded to plaintiff
and thereupon plaintiff and defendant entered into a
contract dated May 25, 1906, whereby plaintiff con-
tracted and agreed to prepare and publish defendant's
said second issue of said catalogue according to certain
general specifications fully set forth in said contract
and whereby defendant for said work agreed to pay
plaintiff the sum of nine dollars and sixty cents per
page for all new matter in said second issue or series
of said catalogue; that thereupon plaintiff did the work
in accordance with said contract and defendant paid
plaintiff therefor.

Plaintiff further states that thereafter during the
year 1908, the defendant determined to publish and
issue the third series or issue of its Graphic Compen-

dius Catalogue and in accordance with the terms of said contract between plaintiff and defendant, of June 29, 1905, defendant on or about June 17, 1908, requested of plaintiff a bid for doing said work; that thereupon in answer to said request the plaintiff, on or about the—day of June, 1908, submitted to defendant a bid whereby plaintiff agreed to print, bind and publish for defendant the third issue or series of its said catalogue for the sum of $9.95 per page and in accordance with the same general specifications as for said second series; that said bid so submitted to defendant by plaintiff was no higher than the price asked of defendant by other responsible firms for doing the said work of printing, binding and publishing said third issue of series of defendant's said catalogue, but that defendant, regardless of its duty to plaintiff under and by virtue of the said contract of June 29, 1905, refused to award plaintiff the work of printing, binding and publishing the said third issue or series of said catalogue, or any part thereof, and thereupon awarded said work to the Kelbold Press, a printing and publishing concern in the city of New York, at a price much higher than that at which plaintiff offered and was willing to do said work as aforesaid, and which contract is in writing and in the possession of defendant.

Plaintiff further states that the provision in said contract of June 29, 1905, whereby plaintiff was to have the right to publish for defendant all subsequent series or issues of said catalogue, providing plaintiff's price therefor was not higher than that of other responsible firms, was a material provision of said contract and materially influenced the price at which plaintiff contracted and agreed to do the work upon the said first and second series of said catalogue and in reliance upon said provision being in said contract, plaintiff went to great expense, to-wit, seven hundred and fifty dollars, and expended time and labor to the value of two hundred and fifty dollars, in procuring

types and other material and the services of competent persons in order to properly prepare and print said publications in a great number of languages and in addition thereto plaintiff, by reason of defendant's failure to comply with its said contract and award to plaintiff the work of printing, binding and publishing the said third series or issue of its said catalogue, also lost the profit, amounting to one thousand dollars, upon doing said work, which it would otherwise have made, and all to the damage of plaintiff in the sum of two thousand dollars, for which it prays judgment against defendant."

GOODE, J. (after stating the facts).—The question is whether a valid contract was made between the parties by which plaintiff was entitled to be awarded the work of printing and binding defendant's issue of its catalogue for the year 1908; that is to say, the third issue of catalogues. The objections to the contract are: First, it is unilateral, therefore not binding on defendant; second, it is so vague and uncertain as to be non-enforceable; third, the averments of the petition show the obligation imposed by the contract has been complied with by defendant. In our judgment, the alleged contract was in the highest degree bilateral and fully supported by a consideration moving from both parties. Plaintiff was to be paid a certain compensation per page for new matter in the catalogue of 1905, in consideration of the work of printing and binding; but that was only a portion of the consideration for which it agreed to print and bind the first issue. That work entailed on plaintiff preparatory expense to the amount of one thousand dollars for type and other material and the services of competent persons to print the volume in different languages. Part of the consideration for plaintiff's agreement to print the first issue was the agreement by defendant to award plaintiff the work of printing

"succeeding issues," provided plaintiff's price for such issues was no higher "than that of other responsible firms." It will be perceived the consideration that moved from defendant to plaintiff for entering into the agreement consisted both of defendant's agreement to pay $9.60 for each page of new matter, and of its agreement to employ plaintiff to print and bind succeeding issues in a given contingency, to-wit: that the price was not higher than the prices of other responsible concerns. How this contract can be considered unilateral and lacking in mutuality of consideration for the undertakings of the respective parties, we do not discern, though perhaps the more onerous obligation is on the defendant. It is said plaintiff did not bind itself to bid on, nor to print and bind the subsequent issues of the catalogue, which is true; for plaintiff might or might not bid for the work at its pleasure. Nevertheless defendant agreed, as part of the inducement to plaintiff to agree to print and bind the first issue, to allow plaintiff to bid for the work on succeeding issues, and if it made as low a price as other responsible firms, to give it the preference in awarding the job. We do not understand that a contract supported when it is made by a full consideration moving to both parties, is unilateral, because one of the parties is accorded the privilege to do or not to do certain things in the future, if he agrees to render a consideration for the privilege. [Raymond v. White, 119 Mich. 438; 9 Cyc. 334; Giles v. Bradley, 2 Johns. Cas. 253.] If that were so, most or all contracts allowing an option to buy property within a stated period would be treated as invalid, whereas they are commonly treated as valid. The contention of respondent is equivalent to asking that the stipulation regarding future issues be treated as detachable from and independent of the agreement about the first issue; but this cannot be done, for, as we have said, an integral part of the consideration for plaintiff's promise to print the first one was defend-

ant's promise to allow a preference to any bids plaintiff might put in for later issues. We hold the contract averred in the petition was perfectly mutual in its obligations and as far as that point goes, binding on both parties. It is not like cases which are cited wherein agreements to furnish what goods a party might order during a certain interval and similar promises, were held unilateral. [Cold Blast Transportation Co. v. Bolt & Nut Co., 114 Fed. 77; Santaella v. Lange, 155 Fed. 719; Higbie v. Rust, 211 Ill. 233.] The difference consists in the fact that in the present case a consideration for defendant's promise to give plaintiff's bids for succeeding issues the preference, is found in plaintiff's promise to print the first issue at a price alleged to have been less than plaintiff would have accepted for that job without the promise of a preference for bids it might make for the printing of future issues.

The more difficult question to determine is whether or not the alleged contract was sufficiently definite to be enforceable. Counsel for plaintiff contend it vested in plaintiff a perpetual right to bid at its pleasure for the printing and binding of issues of the catalogue as long as defendant published it, and to have the work of printing and binding all succeeding issues without limit or number awarded to plaintiff, if its price should be as low as that of other responsible bidders. The courts are prone to hold against the theory that a contract confers a perpetuity of right or imposes a perpetuity of obligation. Yet it seems to be the law in this state that where the intention to do this is unequivocally expressed, the contract will be upheld. [Blackmore v. Boardman, 28 Mo. 420; Wiggins Ferry Co. v. Railroad, 73 Mo. 389, 407; Harrington v. Railroad, 60 Mo. App. 223 and cases cited; Diffenderfer v. School Board, 120 Mo. 447, 25 S. W. 542.] But in this jurisdiction, as in others, courts will construe a contract to impose an obligation in perpetuity only

when the language of the agreement compels that construction. [Diffenderfer v. School Board, l. c. 454 and citations.] The terms alleged in the petition to have been those of the contract declared on in the present case, would permit the interpretation that defendant had stipulated to award plaintiff the work of printing and binding all succeeding issues of the catalogue in the event plaintiff's prices were as low as those of other bidders, but the language does not require us to adopt that interpretation; and it is unlikely the parties so intended. The petition charges defendant agreed if "plaintiff's price for doing said work was not higher than that of other responsible firms on succeeding issues of said publication gotten out by defendant, that then defendant would give the work of publishing succeeding issues to plaintiff." That language falls short of saying defendant agreed to give plaintiff the job of printing and binding all succeeding issues of the catalogue gotten out by the defendant, and is consistent with the view that defendant stipulated to award plaintiff the work of printing and binding two or more succeeding issues only; the parties understood plaintiff was to have at least that much preference. Courts set ought to avoid holding contracts too uncertain and indefinite for enforcement if it is possible to do so, and when the meaning of the terms of the contract is doubtful, it ought to be interpreted most strongly against the party seeking to enforce it, unless the other party prepared it. [2 Paige, Contracts, sec. 1120.] For aught that appears, the plaintiff was as much responsible for the ambiguity of the term sought to be enforced as the defendant, and there can be little doubt that the alleged contract ought to be held not to confer the option on plaintiff in perpetuity to do the work of printing and binding every issue of the catalogue defendant might publish, for all time to come. On the other hand, it ought to be held to have conferred on plaintiff the right to be awarded the printing of two or more suc-

ceeding issues if plaintiff bid for the work and its bids were as low as those of other responsible concerns. In other words, plaintiff ought to be held to have been given the preference as to at least two issues. The expressions used is "succeeding issues." It was not a compliance with this term to award plaintiff the work of printing one succeeding issue, because the plural form was used.. It ·would be a compliance to award it the printing of two succeeding issues, and this, we think is the very least right which, in justice, can be allowed plaintiff under the alleged agreement. The action in the present case was for non-compliance with the contract in refusing to award plaintiff work on the second of the succeeding issues; wherefore the judgment will be reversed and the cause remanded. All concur.