## SECURITY STATE BANK, Appellant, v. W. B. SIMMONS.

### Division One, May 31, 1913.

INTERSTATE COMMERCE: Importing Books: Secs. 1024-1026, R. S. 1899, No Bar to Suit on Notes. A contract for soliciting orders for books to be imported into this State and delivered by agents of the company direct to subscribers, is a transaction of interstate commerce, and the statute, Secs. 1024, 1025 and 1026, R. S. 1899, providing that no foreign corporation which has not complied with its provisions can maintain suit in this State upon any demand, does not afford a defense to notes executed to a foreign corporation upon such contract as consideration.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside*, Judge.

REVERSED AND REMANDED.

*Gratia E. Woodside, J. D. Gustin* and *G. C. Dalton* for appellant.

(1) The court should have given the peremptory instruction to find for the plaintiff requested at the close of the defendant's evidence. Where the facts are admitted, or there is a total failure of a defense pleaded, the application of the law is a matter for the court. Ford v. Dyer, 148 Mo. 528; Hite v. Railroad, 130 Mo. 132; Wolff v. Campbell, 110 Mo. 114; Clemens v. Knox, 31 Mo. App. 185; Bank v. Hainline, 67 Mo. App. 483. The undisputed testimony and documentary evidence conclusively established the interstate character of the business in which the notes were given, and the defense of failure of consideration and notice thereof wholly failed. This latter defense was taken from the jury by the court, with the acquiescence of the defendant. (2) The court erred in refusing instructions 2, 3 and 4, requested by plaintiff, submitting a correct test of the interstate or intrastate character of the business of the corporation. United States v. Swift & Co., 122 Fed. 529; United States v. Railroad, 149 Fed. 486; Shoe Co. v. Rubber Co., 156 Fed. 1; Text-book Co. v. Pigg, 30 Sup. Ct. 481; Text-book Co. v. Gillespie, 229 Mo. 397; Rogers v. Iron & Foundry Co., 167 Mo. App. 228. Under these authorities, which contain the latest expressions on this subject from the Federal Court of last resort and the Supreme Court of Missouri, the instructions above were correct declarations of the law of this case. The test is not the location of the corporation, its offices, officers, agencies, or business, but whether the business or transaction under review is interstate in its character.

*J. J. Cope* and *W. P. Elmer* for respondent.

(1) A foreign corporation organized for pecuniary profit must comply with the provisions of the statutes of this State regulating and licensing such corporations before it is authorized to do business within the State and until it has complied with such statutes it is not authorized to maintain any suit or action in any of the courts of the State and is subject to a fine, and the contracts of such corporation are wholly void, are not assignable and cannot be enforced in the hands of any subsequent holders. The leading case on this question is cited first below. Amusement Co. v. Amusement Co., 192 Mo. 404; Young v. Niles & Scott Co., 122 Mo. App. 392; R. S. 1909, secs. 3037, 3039, 3040; Amalgamated, etc., Co. v. Mining Co., 221 Mo. 7; Chicago, etc., Co. v. Simms, 197 Mo. 507; Shoe Co. v. Ramlose, 210 Mo. 631. (2) Contracts executed in pursuance of business transactions within this State by unlicensed corporations are void. Amalgamated, etc., Co. v. Mining Co., 221 Mo. 7. Such contracts to be performed in this State are null and void and cannot be enforced and are not negotiable or assignable. Shoe Co. v. Ramlose, 210 Mo. 631.

BROWN, C.—This is a suit to recover the amount of two negotiable promissory notes for $150 each, executed by the defendant to the Compendium Company, Inc., a corporation of Virginia, and by the payee indorsed in blank without recourse to the plaintiff. The payee was the owner of a copyrighted book, "The Simplex Farm Compendium." The corporation had not complied with the laws relating to the licensing of foreign corporations to do business in this State.

*Suit on Notes.*

Sometime in February, 1908, A. W. Miller, the president of the Compendium Company, with two canvassing agents, J. F. Dangerfield and W. H. McLeod,

came to Salem in Dent county, rented two rooms as an office, furnished them with a borrowed desk and some chairs, and began canvassing for the books and appointing agents for that work. They took orders for several hundred of the books at $3.50 each, which were shipped from Roanoke, Virginia, to them, or some one of them, at Salem, placed in their office, and from there delivered to the subscribers. Either from having ordered more than was necessary to fill the subscriptions, or because some of the books subscribed for were not taken, there were a number left over, some of which were sold and delivered to their agents as sample copies for one dollar. When Mr. Miller came he announced his intention of establishing agencies, and within the next two or three months seems to have secured ten agents, with exclusive territory, on the same terms as were made with the defendant. The contract with defendant is as follows:

### "GENERAL AGENT'S APPOINTMENT.

"This agreement, made and concluded the 29th day of April, 1908, by and between The Compendium Company, Inc., of Roanoke, Virginia, party of the first part and W. B. Simmons of Salem, Mo., party of the second part.

"Whereas, the party of the first part being the manufacturers and sellers of the 'Simplex Farm Compendium' and the party of the second part desires to sell said Compendium in the territory hereinafter mentioned and to acquire from the party of the first part said Compendiums in such numbers and at such prices as hereinafter stated.

"Now, therefore, this agreement witnesseth, that for and in consideration of the sum of three hundred dollars, (a royalty on 300 'Simplex Farm Compendiums,') to be paid according to the obligations this day given by the party of the second part, said party of the first part does this day appoint the party of the

second part its sole and exclusive agent, to sell the 'Simplex Farm Compendium' in the county of Wright, State of Missouri, but not elsewhere, except as herein-. after specified, for the term of one year (1) from the date hereof, with the right to employ subagents to assist him in selling the same in said territory, but no 'Simplex Farm Compendiums' at any time to be sold at retail for less than three and one-half dollars each. Also, the right of ordering all 'Simplex Farm Compendiums' he may want for the term of this agency directly form the manufacturers, according to contract with The Stone Printing & Manufacturing Company, of Roanoke, Va., a copy of which is hereto attached and made a part hereof. Also, to have the right and privilege, equally with first party or its agents, of selling the 'Simplex Farm Compendium' in the counties of Crawford, Phelps, Dent, Texas or Shannon, State of Missouri, for the time specified above; and for each two hundred 'Simplex Farm Compendiums' sold and ordered from the manufacturers by said second party, he shall have the right to sell the 'Simplex Farm Compendium' in any unassigned county in the States of Missouri, Kansas, Oklahoma, Arkansas or Texas which he may select, for the same time as afore stated; and shall all the good territory in said States be assigned, then he shall have the right to select any unoccupied county in the United States, without any further obligation or consideration on his part, and the first party will grant to no other agent the right to sell in such territory so selected.

"The party of the first part further agrees to furnish said party of the second part with good agricultural counties for three (3) years from this date, and also agrees to furnish him with one sample 'Simplex Farm Compendium' and all necessary blanks, on or about the 15th day of May, 1908, free of charge.

"No representations or statements made by any salesman, agent, or other person, in addition to what

is specified in this instrument, shall bind the party of the first part.

"It is mutually agreed by and between the parties hereto, that for every copy of the 'Simplex Farm Compendium' sold, delivered, and collected for by the said party of the second part, or his subagents he shall receive as his commission and payment for services and the commission and services of all his subagents, the sum of two dollars and fifty cents ($2.50) on each copy so sold.

"Said party of the second part here accepts the appointment as agent aforesaid, under the terms, stipulations, conditions, and covenants in this instrument contained, and covenants, promises, and agrees upon his part to keep and perform all the covenants, conditions, stipulations and agreements herein contained to be by him kept and performed; to pay or cause to be paid all persons employed by him as subagents, and persons connected with the sale and delivery of said 'Simplex Farm Compendium,' and to save and keep harmless the said party of the first part from any of the aforesaid charges, claims or demands.

"In witness whereof, the parties hereto have hereunto set their hands the day and year first above written.

          "The Compendium Co. Inc.   (Seal)
          "By A. W. Miller, Pres.
          "W. B. Simmons              (Seal)"

The contract of the Stone Printing & Manufacturing Company referred to and made a part of the foregoing is as follows:

          "STONE PRINTING AND MANUFACTURING CO.
          Manufacturers of the
          SIMPLEX FARM COMPENDIUM.

Reference:

Dun and Bradstreet.                    Roanoke, Va.

"In consideration of the money deposited with us, and other considerations, we agree with The Compen-

dium Co., Inc., and all parties who may be authorized by the said Compendium Co. to sell the Simplex Farm Compendium, to manufacture said book in every way equal to and as perfect as the samples manufactured by us, which are carried and shown by the Compendium Co. and its agents. Said book is made of good quality of writing paper, bound in extra strong boards, best quality red leather back and corners, and sides of the best quality blank book cloth, with gold fillet on back, and sides stamped with special stamp of the Simplex Farm Compendium. And we further agree:

"First. That each and every copy of said Simplex Farm Compendium delivered by us shall be equal in every respect to the description given above. Defective copies may be exchanged for perfect ones.

"Second. That we will keep a sufficient number of books on hand to fill all orders promptly, in accordance with our contract with The Compendium Company.

"Third. That we will secure the most favorable rates by railroad or express, and will sell at one dollar per copy, pack and deliver on board cars in Roanoke, Virginia, in good condition, all books sold, at the price of one dollar ($1.00) per copy. But orders will not be filled if so sold at retail for less than three dollars and fifty cents each.

"Fourth. That a failure to comply with any of the terms of this contract will operate as a forfeiture of our rights, and we further agree to pay all parties to whom we sell the Simplex Farm Compendium all damages they may sustain by reason of our failure to keep this agreement.

"Witness our hands this eighteenth day of July, 1907.

"The Stone Printing & Manufacturing Co.

"By Al. A. Stone."

Each of the agents gave notes similar to those given by the defendant. These notes were discounted

with the plaintiff and within three months from the time of their arrival Mr. Miller and his two original agents left Salem.

The only defense made to the notes is that they are void because the payee had not complied with the provisions of sections 1024, 1025 and 1026 of the Revised Statutes of 1899, authorizing foreign corporations to do business in this State. The value of the book, which is a ledger containing a new and improved system of keeping farm accounts, was not questioned. On the other hand, its usefulness was highly spoken of by the witnesses for defendant.

That the notes sued on in this case were executed by the defendant is admitted. That the promises they evidence are founded upon a sufficient consideration was held by the court at the trial and is not questioned. The defense stands only upon the ground that the transaction in which they were made was one forbidden by the statutes of the State, and that therefore they are absolutely void. This was evidently the view taken by the trial court in submitting it to the jury, for the evidence was clear, and without inconsistency, except, perhaps, such as is to be expected from those slight aberrations of mental vision which frequently result from the interposition of self-interest or personal feeling. The appellant insists that the trial court was wrong, because the statute does not forbid such transactions, and, if it be so construed as to forbid them, as was done in this case, such construction violates that provision of the Constitution of the United States (art. 11, sec. 8) which gives to Congress power to regulate commerce among the several states. The jurisdiction of this court is thus invoked to construe the Constitution. This provision has been so often before the courts that it is with diffidence, and fear of incurring the imputation of pedantry, that one ventures any general observations concerning it. It

**Interstate Commerce: Importing Books.**

may, however, be excusable to say that it affords a guaranty of commercial prosperity founded upon the mutual interests of all, which no merely conventional union could give. The State is the proper guardian of the commercial activities within its own borders. It may be trusted to defend them against all adversaries. But the people of a common country are not adversaries. They must unite in the development and defense of their common interests, and it is for this reason that their commercial relations, as well as the coining of the money which furnishes the foundation for all commercial exchange, have been committed to Congress, and they have made the national Supreme Court the final interpreter of the laws in this respect. It is to that court, therefore, that we must look for the final word on the subject.

The notes in suit constitute a part of a contract in which the defendant and maker was appointed selling agent of the payee and indorser, the Compendium Company, Inc., which is admitted to have been, at the time, a Virginia corporation, for a certain copyrighted book called the "Simplex Farm Compendium." The consideration of the note was this appointment and the rights accruing under it. These rights consisted, in the main, of exclusive territory in which to sell the book, and a guaranty that it might be purchased from the manufacturer, the Stone Printing and Manufacturing Company at Roanoke, Virginia, at the price of one dollar per copy delivered on board the cars at that place, provided they had already been sold for three dollars and fifty cents each, but not otherwise. These terms were secured to selling agents by a contract between the Compendium Co. and the Stone Printing and Manufacturing Co., a copy of which was attached to the instrument of appointment, and made a part of it.

It is true that the statute invoked by the respondent (R. S. 1899, secs. 1024, 1025, 1026) required certain

things to be done by a foreign corporation before a certificate should be given it authorizing it to do business in this State, and provided that no such corporation which should fail to comply with the provisions of the act "can maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of contract or tort;" but, as was said by Judge Woodson for this court in Roeder v. Robertson, 202 Mo. 538, "it was not the intention of the Legislature to prohibit the enforcement of valid contracts made by foreign corporations in their own States with citizens of this State. There is nothing in our laws which denies the right of such corporations to enforce valid contracts, whether made in this State or not." In Crutcher v. Kentucky, 141 U. S. 47, the Supreme Court of the United States said: "To carry on interstate commerce is not a franchise or a privilege granted by the State; it is a right which every citizen of the United States is entitled to exercise under the Constitution and laws of the United States; and the accession of mere corporate facilities, as a matter of convenience in carrying on their business, cannot have the effect of depriving them of such right, unless Congress should see fit to interpose some contrary regulation on the subject." This statement of the law was approved in International Text-book Company v. Pigg, 217 U. S. 91, and was followed by this court in International Text-book Company v. Gillespie, 229 Mo. 397, in which the opinion of Mr. Justice Harlan in the Pigg case is substantially quoted in full, with the statement that it is binding on this court. Its reason is evident. It is open to the observation of all that commerce among the States is largely conducted by corporations. Its carriers, whether by land or water, together with the importers, manufacturers and merchants which produce and sell the articles of which it largely consists are almost universally incorporated, so that corporations are the agencies and instrumen-

talities of its prosecution; and if these could not go into a State other than that of their domicile without its permission, the control vested by the Constitution in Congress would be a mere form of words without vitality. Their right to transact this business does not depend upon the authority or permission of the State in which it is done, because it is within the province of national and not of State legislation. Conditions imposed on their right to do business wholly within the State and subject to State legislation would be open to no such objection. [Crutcher v. Kentucky, supra.]

The only question, then, for our consideration is whether the contract which constitutes the consideration of the notes in suit relates to commerce between the States. The fact that it may have required an office and employees to transact it is unimportant, as is held in the International Text-book case, supra. In those cases the company had elaborate facilities of that description. The test applied to determine the character of the transaction was quoted from the opinion of Judge SANBORN in Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 17, as follows: "Importation into one State from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade and dealing between citizens of different States, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce." In those cases the company solicited contracts for the sale of "information" to be imported into the States of Missouri and Kansas to be paid for by the recipients as agreed in writing. This was held to be interstate commerce. In this case the contract is for soliciting orders for books to be imported into this State and delivered by the agents of the company direct to the subscribers ordering them. We can see no difference between these cases so far as the ques-

. tion of commerce among the States is concerned. They both come directly within the definition quoted supra, from the opinion of Judge SANBORN, and approved by the Supreme Court of the United States and this court. The judgment of the trial court is reversed, and the cause remanded for further proceedings in accordance with this opinion.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.