**SUPERIOR CONCRETE ACCESSORIES, Inc., Respondent,**

v.

**Merle E. KEMPER, doing business as Merle E. Kemper Company and Merle E. Kemper-Superior Company, a Corporation, Appellants.**

**No. 44415.**

Supreme Court of Missouri, Division No. 2.

Nov. 14, 1955.

Motion for Rehearing or for Transfer to Court en Banc Denied Dec. 12, 1955.

Roy P. Swanson, Richard G. Poland, Kansas City, for appellants. Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, of counsel.

James C. Wilson, Colvin A. Peterson, Jr., Kansas City, for respondent. Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

STOCKARD, Commissioner.

This is a suit for a declaratory judgment. The questions on this appeal are whether respondent, as a foreign corporation not licensed in Missouri, has the right to maintain this suit, and if so, whether it has the right to terminate unilaterally a contract between it and the appellants.

On June 24, 1941, Merle E. Kemper, doing business as Merle E. Kemper Company (hereafter referred to as "Kemper") entered into a distributor's sales agreement with Superior Concrete Accessories, Inc., an Illinois corporation, the predecessor of the respondent herein. In 1948 Merle E. Kemper, his wife and another person formed a corporation under the laws of Missouri by the name of Merle E. Kemper-Superior Company (hereafter referred to as Kemper-Superior). The distributor's sales agreement "was sold" to Kemper-Superior, but the ownership of stock of Kemper-Superior by those other than Kemper was nominal and no material change resulted in the methods of operation.

 From the declaratory judgment that the distributor's sales agreement "is hereby terminated and cancelled" the appellants have appealed. The relief sought is not a money judgment, but the only basis for jurisdiction in this court is the amount in dispute. The applicable rule is that when the object of the suit is to obtain other than a money judgment the amount in dispute must be determined by the value in money of the relief to the plaintiff, or of the loss to the defendant, should the relief be granted, or vice versa, should the relief be denied. Higgins v. Smith, 346 Mo. 1044, 144 S.W.2d 149; National Surety Corporation v. Burger's Estate, Mo.Sup., 183 S.W.2d 93; Juden v. Houck, Mo.Sup., 228 S.W.2d 668. It affirmatively appears from the record that the money value of the loss to the appellants, should the relief requested by respondent be granted, would be in excess of $7,500 exclusive of interest and costs. Jurisdiction is in this court.

Section 351.570 (all statutory references are to RSMo 1949, V.A.M.S.) provides that a foreign corporation organized for profit shall, before it "transacts business" in this state, procure from the Secretary of State of Missouri a certificate of authority to do so. Section 351.635 provides that no foreign corporation "doing business" in this state which has failed to procure the required certificate of authority "can maintain any suit or action, either legal or equi-table, in any of the courts of this state, upon any demand, whether arising out of the contract or tort, while the requirements of this chapter have not been complied with."

Respondent is engaged in the business of manufacturing, distributing and selling, among other things, steel products for use in and in connection with concrete construction work. Its plant and offices are located in Chicago, Illinois. Pursuant to the distributor's sales agreement, Kemper takes orders in respondent's name for merchandise in Oklahoma, Kansas and Western Missouri, his exclusive territory, and sends the orders to respondent's office in Chicago, Illinois, where respondent fills them by shipping the merchandise directly to the purchaser. Respondent bills the purchaser and is responsible for making collections, although Kemper stated that at times he assisted in some collections.

The distributor's sales agreement requires that Kemper maintain, at his sole expense, a warehouse for consigned stock. Before the contract was assigned to Kemper-Superior he maintained a warehouse at the Adams Storage & Transfer Co. in Kansas City, Missouri, and the consigned stock was stored there in Kemper's name. After Kemper assigned the contract to Kemper-Superior, the warehouse was maintained by Kemper-Superior in a building owned by Kemper and his wife. The consigned stock was shipped to Kemper f. o. b. Chicago.

In addition to the merchandise on consignment from respondent, Kemper also kept in his warehouse what he called "service items" and he handled and warehoused products other than those of respondent, at least one of which he manufactured himself and which was an item competitive to respondent's products. The record is indefinite concerning sales of products from the warehouse. Kemper testified that when he made a profit on a sale of a product of respondent, "I sell it for myself," but that when he sold a service item at no profit he sold it "as an agent for Superior." He also testified that he acted as "distributors, independent purchasers and buyers for our own account for Superior products," and

that the "Merle E. Kemper Company buys and sells" respondent's products. Kemper maintained his own office at his sole expense and he employed salesmen whose salaries he paid without reimbursement from respondent. The billing arrangement on sales made by Kemper is not clear. Kemper stated: "There are several different ways in which the billing is done. It is just according to what the court would like to hear. When Merle E. Kemper-Superior Company, the corporate defendant in this case, takes an order in Superior's (respondent's) name we send the order into Superior and let Superior bill; but when Merle E. Kemper Company takes an order it bills itself, so it turns the billing over to the Merle E. Kemper-Superior Company, who, in turn, sends it to Superior to bill."

Kemper admitted that he had testified correctly in a previous lawsuit between the same parties that he never made reports to respondent as to what customers he had solicited or what territory he traveled or where he operated; that respondent had asked for such reports but that he had replied that he was not subject to its regulations as to where he went or what his business activities were; that he operated independently and that respondent had no authority to tell him what to do or where to go; that he was not subject to any supervision of respondent as to the prices at which he sold Superior products; and that after he bought the merchandise of respondent he sold it for the price he felt was right.

The record is not as clear as it might be, but from the above it appears that Kemper carried on three separate and distinct operations. He solicited orders for respondent's products and sent the orders to respondent in Chicago to be filled by direct shipment to the purchaser; he bought and sold respondent's products on his own account; and he sold those products of respondent which he had on consignment in his warehouse.

■ . The solicitation of orders for goods within a state by a foreign corporation through a resident broker or commission merchant who maintains a local office at his own expense, and the shipments of goods by the foreign corporation into the state directly to the purchasers pursuant to such orders, constitute business in interstate commerce, and does not constitute doing business within the state so as to subject the foreign corporation to local statutes prescribing conditions for doing business within the state. Yarbrough v. W. A. Gage & Co., Inc., 334 Mo. 1145, 70 S.W.2d 1055; Yerxa, Andrews & Thurston, Inc., v. Randazzo Macaroni Mfg. Co., 315 Mo. 927, 288 S.W. 20; Hess Warming & Ventilating Co. v. Burlington Grain Elevator Co., 280 Mo. 163, 217 S.W. 493; Security State Bank v. Simmons, 251 Mo. 2, 157 S.W. 585; International Text-Book Co. v. Gillespie, 229 Mo. 397, 129 S.W. 922, General Excavator Co. v. Emory, Mo.App., 40 S.W.2d 490; Republic Steel Corporation v. Atlas Housewrecking & Lumber Corporation, 232 Mo. App. 791, 113 S.W.2d 155; J. B. Colt Co. v. Watson, 215 Mo.App. 467, 247 S.W. 493. See also annotations on this subject at 60 A.L.R. 994 and 101 A.L.R. 126.

■ It is obvious that under the circumstances of this case the acts of respondent in selling its products at a discount and shipping them to appellants who in turn sold the products at a profit to the ultimate user did not constitute doing business in this state by respondent. This is the usual wholesale-retail arrangement. Therefore, if respondent is illegally doing business in this state it is by reason of the relationship between respondent and appellants in the operation of that part of the business done by appellants in warehousing and selling merchandise owned by respondent and in the possession of appellants on consignment.

■ Under the terms of the agreement the relationship between respondent and appellants concerning the merchandise on consignment was that of principal and factor. Butler Bros. Shoe Co. v. United States Rubber Co., 8 Cir., 156 F. 1. Such relationship, without more, does not make the factor that type of an agent of the foreign corporation which results in the factor conducting the business of the foreign corporation in the state where the sales take place. International Text-Book Co. v.

Gillespie, supra; Yarbrough v. W. A. Gage & Co., Inc., supra; Dinuba Farmers' Union Packing Co., Inc., v. J. M. Anderson Grocer Co., 193 Mo.App. 236, 182 S.W. 1036; General Excavator Co. v. Emory, supra; Republic Steel Corporation v. Atlas Housewrecking & Lumber Corporation, supra; 60 A.L.R. 994, at page 996; 101 A.L.R. 126, at page 129; Harrell v. Peters Cartridge Co., 36 Okl. 684, 129 P. 872, 44 L.R.A., N.S., 1094; L.R.A. 1916F, 334. However, if there is in fact such interference with the business of the factor by the foreign corporation as to show that the business he is carrying on is that of the foreign corporation, then the foreign corporation is doing business in the state where the sales are made. Republic Steel Corporation v. Atlas Housewrecking & Lumber Corporation, supra. Appellants contend that respondent is illegally doing business in this state by reason of the following: through a sales agent respondent carries on certain activities in the St. Louis area, none of which are done pursuant to the agreement upon which this suit is brought; credit risks on sales made out of appellants' warehouse all fall on respondent; Kemper is required by the agreement to furnish "service items" at no profit to himself to customers of respondent in Missouri as well as the rest of his exclusive territory; Kemper has at times assisted respondent in collecting accounts, respondent has furnished Kemper with sales literature; respondent has referred customers to Kemper and instructed prospective customers to contact Kemper and has referred to him as its representative; and respondent's president considered Kemper to be respondent's agent.

■■ We need not consider the acts of respondent and its sales agent in the St. Louis area. "The fact that a [foreign corporation], as to other matters and transactions, may be doing business within the state in such manner as to require a license therefor, does not prevent the company from performing another perfectly valid transaction in interstate commerce which is not subject to state regulation. * * * The right to sue is not taken away by the state statute for failure to have a license, but only the right to enforce contracts made in the doing of business subject and contrary to state regulation. British-American Portland Cement Co. v. Citizens' Gas Co., 255 Mo. 1, 32, 164 S.W. 468, Ann.Cas. 1915C, 151. Consequently the mere fact that a company without a license, may have engaged in business within the state for which a license is required, is no reason for penalizing it with reference to interstate business for which no license is needed." Gutta Percha Mfg. & Rubber Co. v. Lehrack, 201 Mo.App. 550, 214 S.W. 285, 287. See also Republic Steel Corporation v. Atlas Housewrecking & Lumber Corporation, supra. Therefore, if the operations of respondent, pursuant to the distributor's sales agreement are not transactions in interstate commerce, they constitute doing business in this state and the right to sue in this case is to be denied, but if the operations of respondent pursuant to the agreement on which this suit is based constitute transactions in interstate commerce, the right to sue on the agreement is not denied whether or not other acts which constitute doing business in this state may be performed by respondent in the St. Louis area.

■■ The burden of proof was on appellants to establish that the operations of respondent constituted doing business in this state. We consider it of little importance that respondent may have referred to Kemper as its "representative" and that respondent's president considered Kemper to be an "agent" of respondent. An agent or representative is an instrument of commerce common to both intrastate and interstate commerce, and the use of these terms in no wise differentiates one type of commerce from the other. See State ex rel. Hays v. Robertson, 271 Mo. 475, 196 S.W. 1132. Neither do we attach importance to the statement by Kemper that at times he assisted in collecting accounts for respondent. For all that is shown by the record, these collections may have been solely in connection with interstate transactions, and we cannot assume that they were not. We also fail to find support for appellants' position in the fact that respondent referred

prospective customers to Kemper and that Kemper was required by the contract to "service the territory." This tends to show that respondent intended to do no business in the territory assigned exclusively to Kemper and that Kemper was to handle all local business. Neither do we see any significance to the fact that respondent furnished Kemper with literature. If it served any purpose other than to enable Kemper to take orders for respondent's products to be shipped directly to purchasers or to enable Kemper to carry on his independent business, those upon whom the burden of proof rested failed to show it.

The facts in this case pertaining to the sales of consigned merchandise from the warehouse are similar to those in Republic Steel Corporation v. Atlas Housewrecking & Lumber Corporation, supra, and a comparison is helpful. The foreign corporation, a manufacturer of steel pipe, entered into a contract to supply pipe on consignment, the pipe to be shipped from Ohio to the distributor f. o. b. Kansas City. The foreign corporation controlled the price at which the pipe was to be sold, the contract prohibited the distributor from handling any other products, the distributor was to keep certain records, make reports and permit the foreign corporation to make inventories of the stock in the distributor's possession. All consigned stock was to remain the property of the foreign corporation until sold and the distributor was to accept all pipe shipped to it, warehouse it, and pay all expenses incidental thereto. The distributor agreed to conduct the business in its own name and guaranteed payment to the foreign corporation on all sales. It was held that by engaging in the particular business set out above the foreign corporation was not engaged in transacting or doing business in this state.

Appellants contend that the Republic Steel case must be distinguished because in that case all credit risks fell on the local distributor. The agreement in the present case provides that respondent "will ship and invoice all orders and handle the collection of the same." Respondent admitted that it extended credit; and stood

the loss if any, when it invoiced. The above provision in the agreement could not refer to the orders filled from the merchandise on consignment because Kemper or Kemper-Superior shipped those orders and not respondent. The trial court found that when Kemper and Kemper-Superior made a sale "out of consigned stock the sale is made for their own account, the customer is billed in their own name and they pay the plaintiff the sale price less the distributor's discount." A careful examination of the record reveals no direct testimony, and but little indirect, pertaining to who bills, extends credit, and collects the purchase price on sales of consigned stock. Kemper made the general statement that when he sold merchandise from the warehouse other than a service item, "I sell it for myself," and that when he operated "for himself by a sale" he received discounts as distinguished from commissions. Respondent's president testified that "where Kemper sells on his own account we sell him at discount," and when the sale is on a commission basis, respondent collects the purchase price from the customer and remits the commission to Kemper, but when Kemper sells directly, respondent bills Kemper for the price of the merchandise less the discount. This is consistent with the most understandable interpretation of the statement of Kemper, quoted previously, concerning the method of billing. It is important to note that in appellants' reply brief the following statement is made: "There are only two findings of fact entered by the trial court upon which we make complaint. The first of these is the finding by the court that all of respondent's business was interstate in character. Of course this is a mixed one of law and fact. * * * It is submitted that the law portion of this problem is where the trial court erred." The second finding of fact objected to pertained to the opportunity of Kemper to recover his investment. Clear and concise evidence concerning the operation of the warehouse could have been shown easily by the parties upon whom the burden of proof rested. Kemper had in his possession his business records and he should be the best informed

on his methods of operation. If the facts were as appellants contend on this appeal, they could have been established beyond question in a few minutes' time by documentary evidence and by unequivocal testimony. This was not done.

■ In Western Outdoor Advertising Co. of Nebraska v. Berbiglia, Inc., Mo. App., 263 S.W.2d 205, 209, it was stated that "a determinative factor of whether the business [of a foreign corporation] was intrastate in nature was the question of continued dealing by the foreign corporation with the property after interstate commerce had wholly ceased, and whether that continued dealing was an isolated transaction or a continuing form of the business of the foreign corporation." In this case respondent shipped the consigned merchandise to Kemper f. o. b. Chicago, and Kemper warehoused the merchandise in a warehouse maintained solely at his expense. Kemper maintained his own office, advertised in his own name or that of Kemper-Superior, and he testified in effect that he was his own master and that he took no orders from respondent concerning how he should conduct his business. He employed salesmen at his sole expense to sell the products he handled. Respondent did not maintain a warehouse in Missouri and had no employees in this state. The distributor's sales agreement did not require the respondent to do business in Missouri, and the evidence as a whole does not establish that in performing under the distributor's sales agreement respondent did business in Missouri. We see no justifiable or sound reason to distinguish this case from Republic Steel Corporation v. Atlas Housewrecking & Lumber Corporation, supra, and being in accord with the result reached in that case, we are of the opinion that the trial court correctly ruled that in performing pursuant to the distributor's sales agreement upon which this suit is based respondent was not doing business in this state.

Turning now to the question of whether the distributor's sales agreement can be canceled by either party unilaterally, we find that the agreement contains the following provision: "Superior and Kemper agree:—That this agreement shall become effective on July 1, 1941, and shall continue in effect thereafter until canceled by mutual agreement." Appellants' position is that the duration of the agreement is perpetual, or if not perpetual, that it must continue in effect for a reasonable time in order for Kemper to recover his investment. Respondent's position is that the agreement was for an indefinite period and could be terminated at the will of either party.

Both parties assert that the distributor's sales agreement is an Illinois contract subject to the laws of Illinois and not Missouri. The facts tend to support this. However, neither party cites a single Illinois case in support of his position concerning the right of respondent to terminate the contract.

■ The agreement in question is of the type in common use in modern industry for the distribution of a manufacturer's product. These agreements usually take the form of an exclusive sales agency contract or an exclusive sales and distribution contract. The agent or buyer does more than merely offer to render service in the sale of the manufacturer's product or to pay the stipulated price therefor. If not expressly provided, it is at least expected and understood that the agent or buyer is to make an investment and to build and maintain a business establishment for the sale or distribution of the manufacturer's product. It may also be said that the manufacturer does more than sell to the distributor or make available his product to the agent. He entrusts the fate of his product in the defined territory exclusively to the agent or distributor and foregoes the opportunity to resort to other sources of distribution in that locality. While there is a marked distinction between the two types of contracts, "yet for the purpose of determining the duration of the relation between the parties and the power to terminate it, they are essentially the same, and cases of either type are authoritative on this point for the other." 4 Williston, Contracts, Revised Edition, § 1027A. The distributor's

sales agreement under consideration is a combination of both types.

In Davis v. Fidelity Fire Ins. Co., 208 Ill. 375, 70 N.E. 359, 363, an insurance company entered into a contract whereby the plaintiffs in that case were appointed its "western agents." The arrangement was an exclusive sales agency contract. The insurance company terminated the contract and the agents brought suit for damages and contended their appointment as agents was permanent. The Supreme Court of Illinois said: "If it be admitted that this [language of the contract] amounted to an agreement that the Western agency should be permanently continued and for permanent appointment, we think it [the contract] might be terminated at the will of either party." In a recent case in the federal courts which arose in Illinois, but which involved strictly an employment relationship claimed to be permanent in its duration, it was said: "Nor can it avail plaintiff that his contract was, in his own words, permanent. * * * In other words, the Supreme Court of Illinois has expressly held that a contract for 'permanent employment' is one at will." Meadows v. Radio Industries, Inc., 7 Cir., 222 F.2d 347, 349.

In briefing this question the parties rely primarily on Missouri cases. The Missouri courts will construe a contract to impose an obligation or right in perpetuity only when the language of the agreement *compels* that construction. Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262; Clarkson v. Standard Brass Mfg. Co., 237 Mo.App. 1018, 170 S.W.2d 407; Massachusetts Bonding & Ins. Co. v. Simonds-Shields-Lonsdale Grain Co., 226 Mo.App. 1071, 49 S.W.2d 645; James Maccalum Printing Co. v. Graphite Compendius Co., 150 Mo.App. 383, 130 S.W. 836; Wm. J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir., 164 F.2d 290. "It is not often that a promise will properly be interpreted as calling for a perpetual performance. Only in such negative promises as to forbear suit or not to carry on a business or occupation is so broad an interpretation likely to be permissible." 1 Williston, Contracts, Revised Edition, § 38. The language used in the agreement before us for consideration is similar to that used in Paisley v. Lucas, supra. It was there provided [346 Mo. 827, 143 S.W.2d 269] that the contract would "'be continued in full force and effect and will not be cancelled or modified, except by mutual agreement'". It was held that the contract was for an indefinite period of time. We see no substantial difference in the meaning and effect of that phrase and the provision for termination in the present case. The period of time that the distributor's sales agreement is to be in effect is not definitely ascertainable by any fixed criterion. The duration of the contract is not fixed expressly or by implication. Its expiration does not depend upon the completion of a given undertaking, or upon the happening of some event. There is no fixed period for its termination and the period therefore is indefinite. See also Faulkner v. Des Moines Drug Co., 117 Iowa 120, 90 N.W. 585, 586, where the duration of the contract was stated to be "until mutually agreed void."

It is the general rule in both Illinois and Missouri, as well as elsewhere, that contracts for an indefinite period of time may be terminated at the will of either party. Davis v. Fidelity Fire Ins. Co., supra; First Mission Covenant Church of Rockford, Ill. v. Rockford Broadcasters, Inc., 324 Ill.App. 8, 56 N.E.2d 632; Van Houten v. Trust Co. of Chicago, 413 Ill. 310, 109 N.E.2d 187; Joliet Bottling Co. v. Joliet Citizens' Brewing Co., 254 Ill. 215, 98 N.E. 263; Paisley v. Lucas, supra; Beebe v. Columbia Axle Co., 233 Mo.App. 212, 117 S.W.2d 624; Clarkson v. Standard Brass Mfg. Co., supra.

Appellants attempt to brush aside the result of Paisley v. Lucas, supra, on the ground that the language relied on is dictum and because the contract was for personal services. The determination that the contract was for an indefinite period was decisive of that case. The language relied on was not dictum. Neither do we believe the

Paisley case is to be distinguished because it pertained to a "personal service or employment contract." The contract in that case was primarily, but not entirely, a contract for the personal services of the agent. There is no question but that respondent contracted with Kemper to obtain his skill and ability as a salesman, although the agreement may not have called for purely personal services. Whatever difference there is in the two contracts in this respect is only a matter of degree.

■ Although appellants contend that Paisley v. Lucas, supra, is not applicable because it pertains to a contract for employment, they also contend that this case is to be governed by the rule in Harrington v. Kansas City Cable Ry. Co., 60 Mo.App. 223. There it was held that a contract for employment for an indefinite time is not terminable at will by the employer when there is separate and additional consideration for the agreement other than the services to be rendered. In an attempt to bring this case under that rule it is contended that appellants were required to establish a warehouse, develop a sales organization and increase respondent's business. But these acts were performed pursuant or incidental to the contract of employment. They were the acts appellants were being paid to do. They do not constitute separate and additional consideration. It is also urged that Kemper gave up other valuable sources of revenue in order to obtain the contract. However, almost every employee abandons other activities and interests when entering new employment, and a showing of only this without special circumstances does not constitute additional consideration to the employer. Minter v. Tootle, Campbell Dry Goods Co., 187 Mo.App. 16, 173 S.W. 4.

■ Appellants next contend that there was separate consideration for the agreement in that after it had been in effect for several years, there was a "republication" of the agreement in consideration of Kemper giving up a valuable cause of action. At the conclusion of one of the several law-

suits between Kemper and respondent, a settlement was reached, and in consideration of the payment to him of more than $5,000 Kemper executed a release which stated that "Nothing herein contained shall constitute any cancellation or modification" of the agreement. That suit was for an accounting. The existence or validity of the agreement was not in issue, and respondent was not contending that it had the right to terminate it at will. At most the recital amounted to a declaration that the agreement was not changed by reason of the settlement of the suit for an accounting. This included the provision making the agreement one of indefinite duration which authorized respondent to terminate it at will. We find no separate and additional consideration within the rule of Harrington v. Kansas City Cable Ry. Co., supra.

We now consider the remaining contention of appellants that if the agreement did not establish a relationship perpetual in duration between the parties, the agreement should continue for a reasonable time so that Kemper can recapture his investment.

The question whether an exclusive sales or distribution contract indefinite as to its duration, should continue for a reasonable time to permit the agent or distributor to recover his investment arises most frequently when a suit for damages is brought for the alleged wrongful termination. In Fargo Glass & Paint Co. v. Globe American Corporation, 7 Cir., 161 F.2d 811, 813, an agent with an exclusive territory expended considerable money and the manufacturer terminated the agreement before the agent received any returns. The agent sued for damages for wrongful termination. The court held: "No controlling Illinois authority has been cited, nor have we found any. The rule which we think has some application here was clearly enunciated by the Missouri Court of Appeals in Beebe v. Columbia Axle Co., 233 Mo.App. 212, 117 S.W.2d 624, 629: 'The limitation is that, in any case of an indefinite agency where it is revoked by the principal, if it ap-

pears that the agent, induced by his appointment, has in good faith incurred expense and devoted time and labor in the matter of the agency without having had a sufficient opportunity to recoup such from the undertaking, the principal will be required to compensate him in that behalf; for the law will not permit one thus to deprive another of value without awarding just compensation. The just principle acted upon by the courts in the circumstances suggested requires no more than that, in every instance, the agent shall be afforded a reasonable opportunity to avail himself of the primary expenditures and efforts put forth to the end of executing the authority conferred upon him and that, if such opportunity is denied him, the principal shall compensate him accordingly.' "

At the time of the trial the agreement had been in effect more than twelve years. The record shows that appellants earned $93,637.78 in commissions and discounts in the four and one-half years immediately before trial, and Kemper testified that he had "made money off the contract." Although Kemper claimed he had spent $100,000 in promoting the business, he admitted that this figure included his entire business expenses rather than only those pertaining to his business under the agreement, and he also admitted that the figure included the cost of maintaining a summer home in a neighboring community.

In view of the return to Kemper under the agreement shown by the record, and the fact that this agreement had been in effect for more than twelve years at the time of the trial of this case, we are of the opinion that the trial court correctly found that Kemper has had a reasonable and ample opportunity to recover the amounts invested by him pursuant to the agreement in the promotion of the business of respondent.

The judgment of the trial court is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

WESTHUES, LEEDY and STORCKMAN, JJ., concur.

EAGER, P. J., not sitting.

**BELLERIVE COUNTRY CLUB, a nonprofit, pro forma decree corporation, Appellant,**