George F. Paisley, Appellant, v. Ray B. Lucas, as Superintendent of the Insurance Department of the State.—143 S. W. (2d) 262.

Division One, September 18, 1940.*

*NOTE: Opinion filed at May Term, 1940, August 5, 1940; motion for rehearing filed; motion overruled at September Term, 1940, September 18, 1940.

*Cullen, Storckman & Coil* for appellant.

830

*Williams, Nelson & English* and *Allen May* for respondent.

DALTON, C.—This is an action at law to recover commissions and bonuses alleged to be due under an insurance agency contract, and damages for breach of said contract. The amount prayed is $699,782.-33, which includes commissions, over-writing bonuses, collection fees and general damages. Plaintiff contends that the contract was entered into between himself and the International Life Insurance Company (hereinafter referred to as International), and that the contract was

thereafter assumed by the Missouri State Life Insurance Company (hereinafter referred to as Missouri State).

Suit was filed October 1, 1928, against the Missouri State and the International. On August 10, 1928, prior thereto, the International had been adjudged insolvent, and receivers had been appointed. Orders of court were entered by which the International, its officers, agents, and employees were enjoined and restrained from interfering with the possession, control and management of the business or assets of the corporation; and the issuance of new policies and the acceptance of applications for insurance by the receivers was prohibited. Thereafter, a reinsurance agreement was entered into with Missouri State. On October 6, 1931, plaintiff dismissed as to the International and proceeded against Missouri State. Missouri State was, thereafter, on August 28, 1933, adjudged insolvent and was taken over by R. Emmett O'Malley, as Superintendent of the Insurance Department of the State of Missouri, pursuant to a decree of the circuit court of the city of St. Louis. R. Emmett O'Malley, as Superintendent of the Insurance Department and as defendant herein, was succeeded by George A. S. Robertson, and, thereafter, Ray B. Lucas succeeded Robertson.

The petition alleged that appellant, on July 1, 1924, entered upon his duties under his contract and that "at all times mentioned herein he was ready, willing and able to carry out all of the conditions required of him by the terms of said contract and so notified defendant." International is charged to have breached its contract by selling its assets and disabling itself for carrying on the insurance business, ceasing to write insurance, failing to pay plaintiff all commissions due him under his interpretation of the contract, and refusing to permit him to write insurance. The petition further alleged that after Missouri State assumed the contract it breached the contract by refusing to permit appellant to write insurance and refusing to pay him. Appellant claims commissions and bonuses from and after July 1, 1924.

Defendant's answer alleged that the contract between appellant and International was unauthorized; that the alleged amendments thereto were without consideration; that the last amendment was against public policy; and that, if the contract was valid, it was breached by plaintiff; that it was cancelled by and at the direction of the Insurance Department of Missouri pursuant to the terms of the contract; that the contract was not assumed by Missouri State; and that plaintiff had been over-paid. A judgment was sought against plaintiff for such over-payment.

On May 23, 1932, William Baer was duly appointed Referee to hear the evidence and decide the whole issue. Before the taking of testimony had been completed, Mr. Baer died, and, thereafter, on April 2, 1934, William H. Killoren was duly appointed successor ref-

eree to hear and decide the whole issue. His report was filed June 6, 1938. He found for defendant and against the plaintiff and found that the contract was executed without authority of International; that the contract had been adopted and ratified by International; that the contract and amendments were supported by sufficient consideration; that the last amendment was not against public policy; that the contract had been breached by plaintiff, but the breach waived by International; that the contract as amended was cancellable by its terms; that the employment was for an indefinite period; that the contract was not assumed by Missouri State; that the contract was ambiguous; that evidence of extrinsic facts was admissible in aid of its construction; that plaintiff was not entitled to commissions and bonuses on policies written, prior to the alleged breach, by agents and sub-agents not secured by plaintiff in territory designated as "open territory," nor on policies written "out of territory;" that plaintiff had been over-paid; and that plaintiff was indebted to defendant in the sum of $10,403.69, which sum defendant was entitled to recover. Exceptions were filed on behalf of plaintiff and defendant, but the referee's report, as filed, was approved and judgment entered thereon. Plaintiff has appealed.

The contract sued on consists of three parts: a four page document dated July 1, 1924, and amendments dated July 1, 1924, and August 26, 1925. The parties purporting to sign the first two instruments as vice-president and secretary of International, respectively, did not hold said officers until long after July 1, 1924. On cross-examination appellant admitted the contract and first amendment were not executed until the latter part of 1924. The true date does not appear from the evidence. On July 1, 1924, appellant was with the Standard Life Insurance Company (hereinafter referred to as Standard), as manager of certain territory at a salary of $250 per month. This salary he continued to receive until December 31, 1924. During this same period appellant had his office with the Standard, and appellant and his agents secured applications for insurance which were submitted to Standard without first having been submitted to International. On this business he received commissions. In November 1924, Standard and International petitioned the Insurance Department of Missouri for approval of a reinsurance contract between the companies which was approved November 21, 1924, and the companies consolidated pursuant to a contract dated November 18, 1924.

Appellant claims the arrangement for consolidation of the companies was made May 8, 1924, the date on which appellant's father became president of International; and that appellant began his duties for International in the fall of 1924, and attended to them from his office with Standard. He did not actually move his offices to the International until December 1924. No objections were raised as to the manner in which appellant performed his services for

International. He was given the title of Home Office Division Manager and remained with International until the date of the receivership. After the execution of the reinsurance with Missouri State, appellant tendered his services under his contract to Missouri State, but his services were refused.

The abstract of the record is very extensive. In addition to much oral testimony, more than 1000 exhibits were presented. Some single exhibits consist of many instruments. Stipulations as to certain facts, and as to the amounts of commissions due, in the event certain conclusions were reached, were filed to shorten the record. The referee's report is quite complete, and reviews the record in a most satisfactory manner, but in some instances fails to make findings of fact. His report was confirmed and approved.

The parties, although conceding that this proceeding is an action at law, have presented and argued the cause on appeal as if it were triable *de novo* in this court. However, the rule is that the findings of fact by a referee, when approved and confirmed by the trial court, occupy the same status on appeal as the verdict of a jury, and will not be disturbed if based upon substantial evidence. [Baum v. Davis (Mo.), 85 S. W. (2d) 757, 766; Kline Cloak & Suit Company v. Morris, 293 Mo. 478, 494, 240 S. W. 96, 100; Nodaway County v. Kidder, 344 Mo. 795, 129 S. W. (2d) 857, 859.] The construction of the contract, the conclusions of law from the facts found, and conclusions of law from facts not in dispute are, of course, reviewable.

On this appeal appellant urges: (1) that he is entitled to all commissions and bonuses on all insurance written in any territory mentioned in his contract, including that which was agreed to be "open territory" and written by agents not appointed by him; (2) that he is entitled to commissions and bonuses on certain stipulated insurance policies written in territory not named in his contract and by agents not appointed by him; (3) that his contract was expressly assumed by Missouri State because it was a contract of employment for a definite period of time and not cancellable by its terms; (4) that Missouri State is further liable to him on the contract on the ground of continuation and merger with International, and on the ground of fraud; (5) that his contract was not cancelled by direction of the Insurance Department; (6) that his contract was breached by reason of the receivership of International; (7) that the court orders for International to cease business did not constitute a withdrawal from the territory within the meaning of the contract provisions; (8) that his contract was breached by Missouri State's refusal to let him proceed under his contract; (9) that the damages claimed are not speculative but recoverable; and (10) that respondent is not entitled to recover from appellant any over-payments made to him by International.

It is conceded that appellant is entitled to any amount due him

on business effected under his contract, or written in the exclusive territory, prior to the alleged breach by International, but the construction of appellant's contract, and whether it was assumed by Missouri State, is in dispute.

Appellant claims to be entitled to "all commissions and bonuses on all business written" subsequent to July 1, 1924, in "open territory" by agents not appointed by appellant. The contract contains the following provisions which bear upon appellant's claim:

"The Company hereby appoints the said Manager for the purpose of procuring, in person and by sub-agents and employes, applications for insurance . . . in such territory as may be assigned to the Manager by the Company.

"The authority of the Manager shall extend no further than is hereby stated. . . . The Manager shall have the right, at his discretion, to cancel any sub-agent or employe's contract in the territory named herein, except such contracts as have been made prior to May 8, 1924.

"The Manager agrees to faithfully devote his time hereunder, and not to submit to any other company proposals for any forms of insurance issued by the Company, unless the same shall first have been declined by the Company.

"The Manager shall receive the following commissions . . . on all policies issued upon approved applications submitted to the Company by said Manager, sub-agents, or issued on any applicant in the territory named herein. . . .

"The Manager is hereby assigned the following territory and it is especially understood and agreed between the Manager and the Company that the following named territory, shall be open territory: the City of St. Louis, and (certain counties) . . . Having previously developed the following Counties, it is especially agreed that the said Manager shall have exclusive rights therein: (Counties named) . . .

"The Manager shall appoint and manage all sub-agents in the territory and shall have supervision of all agents operating in said territory named herein, and all sub-agents contracts . . . must be submitted to the Home Office for approval. . . . ." The amendment of July 1, 1924, provided for additional commissions and bonuses "on all business effected under this contract."

Appellant here contends that the contract is clear and unequivocal in meaning and that the designations "open territory" and "exclusive rights" refer to control, and do not apply to compensation. However, before the referee, appellant offered evidence as to the situation of the parties at the time the contract was entered into, the facts and circumstances surrounding its execution, and the practical construction placed thereon by the parties. Respondent objected to this evi-

dence and contended that the contract was unambiguous, but being overruled, respondent later offered extrinsic evidence.

A contract is ambiguous when its terms are reasonably susceptible of different constructions. [Webb-Kunze Construction Company v. Gilsonite Construction Company, 281 Mo. 629, 220 S. W. 857, 860.] We think the contract on its face is ambiguous and its meaning uncertain. By its terms certain territory is agreed to be "open territory," while in other territory appellant's rights are said to be "exclusive." Appellant is appointed "Manager for the purpose of procuring, in person and by sub-agents and employees, applications for insurance . . . in such territory as may be assigned." The manager may *appoint and manage all sub-agents in* "*the territory*" *and may supervise all agents* operating in "*the territory named herein.*" He is given certain commissions "on all policies issued upon *approved applications submitted to the company by said manager, sub-agents, or issued on any applicant in the territory named herein.*" In view of the agreement as to "open" and "exclusive" territory, what territory was "assigned" to appellant and what was "the territory named herein?" Is appellant entitled to all commissions on all policies issued in both the "open" and "exclusive" territory whether written by agents appointed by him or not? What is intended to be included by the words "all business effected under this contract?" What is "open territory?" We hold that extrinsic evidence was admissible to aid the court in construing said contract. The cause was tried by appellant below on that theory.

The referee found that there was no direct evidence as to which of the parties prepared the contract, but that it was almost a duplicate of the contract appellant had been working under with Standard immediately prior to the execution of the contract with International; that the largest volume of business written in "open territory" by agents not secured or appointed by appellant was through International's general agent, Hughes, and his sub-agents; that of 495 policies written in "open territory" between July 1, 1924, and July 1, 1925, on applications secured by Hughes and his sub-agents, appellant received credit for commissions and bonuses on only 30 policies; that appellant conceded he had not been credited daily or weekly with all commissions now claimed; that on August 29, 1925, appellant received an additional credit of $6940 for overwriting commissions and bonuses not previously credited; that there was no evidence as to the specific items covered by the credit; that from August 29, 1925 to April 23, 1926, appellant was credited on the books of International for every item of commissions, bonuses or income from the issuance of policies on applications secured by "disputed agents;" that the matter of appellant's claims came to the attention of the company's actuary on April 16, 1926; that the matter was presented to the president of the company and an opinion

secured from the company's counsel to the effect that appellant was not entitled to such commissions under his contract; that from that date appellant no longer received commissions or bonuses on the business of "disputed" agents in "open territory;" that appellant continued in the employment of the company under the contract without receiving such commissions and bonuses; that appellant claimed to have objected by letter to such construction of his contract; that, although appellant claimed to have protested to the president, counsel and board of directors of the company, the records of the company failed to show any such protest; and that the president had no recollection of any protest. Many other facts appearing in the record are not covered by the referee's findings. For example, it appears that at the date of the contract the International had a number of general agents and their sub-agents working in the territory designated as "open territory." One of these general agents alone had more than 50 sub-agents working under him. There was some evidence that appellant co-operated with some of these agents and that some reports of their work came to appellant's desk. There was no evidence that appellant's claim to commissions and bonuses on "disputed agents," or that the fact that he had received any such commissions, ever came to the attention of any officer of the company until the actuary called the matter to the attention of the president in April 1926. The authority, if any, for the credit of August 29, 1925, was not shown, nor the circumstances which caused subsequent disputed commissions to be credited to appellant's account until April 1926. Space does not permit mentioning of other relevant matters.

The terms "open" and "exclusive" are not defined in the contract but from the evidence offered as to the meaning of these terms, which evidence was somewhat conflicting, the referee found as follows: "The expert testimony offered shows that by the term 'open territory' is meant that territory in which any licensed agent of the company might have the right to solicit policies of insurance and receive commissions on the business written therein; 'exclusive territory' is that in which only the agent whose contract carries with it exclusive rights would have the right to solicit insurance and receive commissions thereon, unless he specifically designates sub-agents who might operate through him."

In construing a contract of doubtful meaning the court must give such construction as will be fair and reasonable between the parties and not give one an unfair advantage over the other. Common sense and good faith are the leading characteristics of all interpretations. [Counts v. Medley, 163 Mo. App. 546, 555, 146 S. W. 465.] The ordinary meaning of the language used must be given effect and the intention of the parties gathered from a consideration of all provisions of the contract. When the intention of the parties is as-

certained it will be given effect unless it violates some rule of law. [Meyer v. Christopher, 176 Mo. 580, 594, 75 S. W. 750.] For the purpose of determining the intention of the parties and reaching a construction that is fair and reasonable under all the facts and circumstances, the court may consider the relationship of the parties, the subject matter of the contract, the usages of the business, the surrounding facts and circumstances attending the execution of the contract and its interpretation by the parties. [Mecartney v. Guardian Trust Company, 274 Mo. 224, 238, 202 S. W. 1131, 1134; Home Trust Company v. Shapiro, 228 Mo. App. 266, 64 S. W. (2d) 717, 727; Donovan v. Boeck, 217 Mo. 70, 87, 116 S. W. 543, 547; Thompson v. Lindsay, 242 Mo. 53, 72, 145 S. W. 472.]

Considering the detailed terms of the contract, the facts found by the referee, and other facts and circumstances in evidence, we think it is apparent that appellant was appointed "for the purpose of procuring in person and by sub-agents and employes, applications for insurance;" that the "business effected" in the "open territory" by the "disputed agents," that is, agents not secured or appointed by appellant, was not "effected under" appellant's contract; that the "open territory" was not "assigned" to appellant except as a place where he and his sub-agents could work and secure applications for insurance; that the words "the territory named herein" must be held to mean the territory in which appellant was given exclusive rights; and that the territory which was expressly agreed to be "open territory" was not "named" in the contract, except as "open territory" wherein appellant could "appoint and manage all sub-agents" and receive commissions and bonuses on the business written by them, without interfering with other general agents and sub-agents working in said territory and without the company being required to pay appellant any commissions or bonuses on business written by said other general agents and their sub-agents in said "open territory." We hold that appellant was not, under his contract, entitled to receive commissions and bonuses on applications for policies of life insurance secured in the "open territory" by agents not secured or appointed by him.

Appellant further claims to be entitled to commissions and bonuses on certain policies mentioned in a stipulation. These policies were issued to applicants residing outside of the territory mentioned in appellant's contract and solicited by agents not appointed by appellant. The particular facts upon which appellant's claim to commissions and bonuses on these policies is covered by a stipulation filed by the parties. The stipulation covers 37 pages of the record. We have reviewed the facts therein stated and the interpretation placed thereon by the respective parties. In some few instances mentioned in the stipulation appellant was paid commissions on these "out of territory" policies, but respondent claims that this was due to mis-

take. In certain instances, mentioned in the stipulation, certain general agents received commissions on policies under somewhat similar circumstances. However, appellant had no contract with International entitling him to the commissions and bonuses here claimed. The contract sued on makes no provision for such payments to appellant, and the record fails to establish a custom which could be considered as an implied term of the contract. Appellant contends that he is entitled to commissions on the theory that the issuance of the policies by the company was the ratification of an unauthorized act of appellant and that, therefore, he is entitled to the commissions. The record does not sustain his contention. We hold that appellant is not entitled to commissions or bonuses on these "out of territory" applications which were received at the Home Office and on which policies were duly issued. The mere fact that, in a few instances, no agent's commissions will be paid on certain policies does not effect appellant's right to recover such commissions.

Was appellant's contract assumed by Missouri State, that is, except as to International's liability to appellant on business written previous to the receivership, which liability is admitted? In the reinsurance contract entered into between the receivers of International and the Missouri State, effective August 25, 1928, Missouri State, after other specific assumptions, agreed to "assume any and all other contractual obligations of said International Life ordinarily arising in the ordinary course of administration of a life insurance business . . . excepting from this assumption the International Life contracts with its agents regardless of classification or supervisors, which contracts are, or may be, subject to cancellation by their terms. It being specifically understood that such agents and/or supervisors contracts as are not subject to cancellation are hereby assumed."

Whether or not appellant's contract was assumed depends upon its particular provisions. The pertinent provisions of appellant's original contract are as follows: "The company reserves the right to modify at any time, or cease to issue any policy or policies named herein, and to withdraw from the territory specified hereunder. . . . Unless otherwise terminated, this contract may be terminated by either party by a notice in writing delivered personally, or mailed to the other party at the last known address, at least thirty days before the date therein fixed for such termination. All rights to further commissions in this contract are not impaired. . . . Should the volume of paid-for business procured by the manager, sub-agents, employes, or in the territory assigned said manager, total less than $1,000,000 in any calendar year, the Company, may at its option, cancel this contract. Should this contract be terminated for any cause whatsoever, the renewals are and will be non-forfeitable and shall be paid to the Manager or his legal representatives as though this contract was in full force and effect."

The amendment of August 26, 1925, which became a part of the contract provides: "It is understood that said contract and supplements thereto will be continued in full force and effect and will not be cancelled or modified, except by mutual agreement, . . . or unless the Insurance Department of the State of Missouri by proper order requires and demands such modification, or cancellation."

The above amendment was secured for and on behalf of appellant by appellant's father, then president of International, and as a condition precedent to the sale of the father's stock in International to certain other officers and directors of International. Appellant was afraid the proposed purchasers might be unfriendly and promptly terminate his contract. The amendment was requested in order that the son might remain with the company after his father's retirement.

On September 6, 1928, and subsequent to the receivership of International and the effective date of the reinsurance contract with Missouri State, the Superintendent of the Insurance Department of Missouri advised appellant and Missouri State with reference to the contract and amendments, as follows: "Due to the burdensome conditions of this contract, which makes the writing of business under it unwise and unprofitable for the company and the setting up of proper reserves on business so written practically impossible, and in view of the circumstances surrounding the making of the contract and its supplements and of the interpretations of such contract, as we understand are sought to be enforced by Mr. Paisley against the International Life Insurance Company, this Department had determined that it would require and demand that the International Life Insurance Company should cancel the same. . . . This Department can no more permit the Missouri State Life Insurance Company to continue said contract in force than it would have permitted the International to have done so.

"This is, therefore, to advise you and each of you that this Department orders, requires, and demands that the said contract and all supplements thereto be and they are hereby cancelled, effective from and after this date."

On September 7, 1928, Missouri State advised appellant that pursuant to the order of the Missouri Insurance Department the Company was compelled to and did cancel any contract relationship by reason of the contract and supplements mentioned in the Department's letter.

The referee and the trial court held "that the contract, and supplements thereto attached, and sued upon herein, was not assumed by the Missouri State Life Insurance Company, because the contract, as amended by the supplements, was subject to cancellation by its terms in the following respects, to-wit: (a) The contract, in its supplement of August 26, 1925, expressly provides for cancellation by the Insurance Department of the State of Missouri. (b) Because

under the terms and provisions of the contract it is not an employment for life, but an employment for an indefinite period, and, therefore, under the law of Missouri, is subject to termination at the will of either party.''

Appellant contends that after the amendment of August 26, 1925, the contract was non-cancellable unless appellant's paid-for business failed to total $1,000,000 in any one calendar year; that the mere fact that the exact length of the term of employment could not be determined by examining the contract, did not make the contract one for an indefinite term, so long as the length of service depended upon any certain or fixed event or definite criterion, to-wit, until appellant's paid-for business failed to total $1,000,000 per year. We do not so construe the contract. If the amendment superceded one express provision for cancellation, it superceded all. Appellant insists that if the amendment eliminated both provisions for cancellation the contract became a contract of employment for life, for a definite period, and cancellable only for cause; and that the intention of the parties, that the contract should be for life, could not have been more clearly expressed.

A careful reading of the entire contract and amendments fails to disclose any language, which in our opinion, clearly expresses an intention of the parties that the contract should continue so long as appellant should live. The language of the amendment, while evidencing a present intention not to cancel, does not indicate an express intention to confer upon appellant a perpetual right of employment. [Minter v. Dry Goods Co., 187 Mo. App. 16, 26, 173 S. W. 4.] No such intention appears from the evidence in the record. Considering the language used, the subject matter of the contract and the situation of the parties, we think the employment was to continue only so long as it was mutually satisfactory to the parties. The applicable rule of law is well stated in the case of James Maccalum v. Graphite Compendius Company, 150 Mo. App. 383, 391-392, 130 S. W. 836, as follows: ''The courts are prone to hold against the theory that a contract confers a perpetuity of right or imposes a perpetuity of obligation. Yet it seems to be the law in this state that where the intention to do this is unequivocally expressed, the contract will be upheld. (Citing cases.) But in this jurisdiction, as in others, courts will construe a contract to impose an obligation in perpetuity only when the language of the agreement compels that construction.'' [See also: Massachusetts Bonding & Insurance Company v. Simonds-Shields-Lonsdale Grain Company, 226 Mo. App. 1071, 49 S. W. (2d) 645, 648.] The period of employment under the contract as amended is not definitely ascertainable by any fixed criterion. The duration of the contract was not fixed expressly or by implication. Its expiration does not depend upon the expiration of a period of time, upon the completion of a given undertaking, or upon the happening of some

event. A contract for life will be upheld only where the intention, that the contract's duration is for life, is clearly expressed in unequivocal terms. We hold that appellant's employment under the contract was for an indefinite period and could be terminated at the will of either party.

The rule is stated in 32 C. J. 1061, sec. 136 as follows: "The rules which govern the duration and termination of other contracts of agency ordinarily apply in determining, under the terms of the particular contract, the duration and termination of a contract of agency for an insurance company. The agency may be terminated by the mutual consent of the parties, by operation of law, such as by the death of the agent; and if the agency contract fixes no date or time for its duration it may, as a general rule, be terminated at any time at the election of either party." [See also: 2 C. J. S. 1148, sec. 68; 17 C. J. S. 889, sec. 398; 12 Am. Jur. 860, sec. 305; Note, 8 Ann. Cas. 280.]

Appellant concedes the general rule that a contract of employment for an indefinite period of time may be terminated at the will of either party. [Davis v. Pioneer Ins. Co., 181 Mo. App. 353, 356, 172 S. W. 67, 68; Staroske v. Pulitzer Publishing Co., 235 Mo. 67, 77, 138 S. W. 36; Meyer v. Pulitzer Publishing Co., 156 Mo. App. 170, 176, 136 S. W. 5.] However, appellant further contends that there is an exception to the general rule that a contract for employment for an indefinite term is cancellable at the will of either party. Appellant says the rule applies only where the sole consideration for the employment is the service to be rendered during the time of employment and that the rule does not apply where there is a separate consideration to support the agreement for constant and continuous employment terminable only for cause. Appellant cites, Harrington v. Kansas City Cable Ry. Co., 60 Mo. App. 223, 228, and other cases. Appellant refers to the recital, "in lieu of the salary that you previously received as City Manager and Supervisor, this company will pay you," in the amendment of July, 1, 1924. The referee found that this amendment and the original contract were executed on the same date. Appellant in his testimony conceded that he had never had a salary from International or a contract providing for such. Neither the contract, the amendments, or the record in this case show any consideration for the contract of employment except service to be rendered thereunder by appellant during the course of his employment. No independent or additional consideration relating to the length of service appears. The contention is overruled. [Minter v. Dry Goods Co., supra., 187 Mo. App. 1. c. 28.]

We hold that appellant's contract was "subject to cancellation" by its terms, because in view of its particular provisions it was a contract for employment as general insurance agent and manager for an indefinite term and it could, therefore, be cancelled by either party

upon reasonable notice to the other. The contract was within the classification of contracts expressly excepted from the assumption contract of Missouri State, as being "subject to cancellation by their terms," and it was not assumed by Missouri State.

Appellant's contract being terminable at the will of either party, the termination of the contract by International's receivership and the orders of court thereunder, did not render either International or Missouri State liable in damages for breach of contract to appellant, and respondent is not liable to appellant. [Staroske v. Pulitizer Publishing Co., supra; Meyer v. Pulitizer Publishing Co., supra; James Maccalum Printing Co. v. Graphite Compendius Co., supra; Davis v. Fidelity Fire Ins. Co., 208 Ill. 375, 70 N. E. 359, 363; Combs v. Standard Oil Co. (Tenn.), 59 S. W. (2d) 525, 526; Willcox & Gibbs Sewing Machine Co. v. Ewing, 141 U. S. 627, 35 L. Ed. 882, 885; Wheeler v. Hartford Life Ins. Co., 227 Fed. 369, 373.]

In view of the conclusion we have reached, it is necessary to consider only one further issue presented by appellant. Was respondent entitled to recover the excess of over-payments from appellant? The reinsurance agreement provided that "International Life does hereby grant, bargain, sell, convey, assign and transfer unto the said Missouri State all of its insurance business . . . together with all of its assets of every kind and character, real, personal, or mixed and wheresoever situated and by whomsoever held (excepting certain claims, unimportant here) and said International Life does hereby agree that all of said assets, with the exception hereinabove noted, together with all appurtenances thereto belonging, shall from the effective date of this contract be held of, possessed and controlled by the said Missouri State, its successors and assigns forever as fully and completely as said International Life does or can now hold, own, use, possess, enjoy or control the same . . ."

It is admitted that in the event the construction which we have now placed upon appellant's contract applies (that is, if appellant is not entitled to commissions and bonuses on policies issued in open territory on applications not secured by appellant and his agents and if he is not entitled to commissions and bonuses on out of territory applications), that appellant was over-paid by International in the sum of $10,403.69. Appellant here insists that the payments were due him when they were made to him by International and that if they were not due him when made Missouri State could not lawfully charge the over-payments against him and take credit itself for said payments. We have passed on the first proposition adversely to appellant. It is conceded that prior to the receivership International had not charged to appellant the over-payments made to him. The matter remained open after April 18, 1926, but appellant was not receiving commissions or bonuses on the "disputed agents." Appellant testified that certain officers of International told him to go

ahead and accept his credits on the undisputed items, and that the disputed items would be taken up and determined later; and for him to go ahead without prejudice until his right in the matter was determined. The matter accordingly remained in abeyance until appellant sued International and Missouri State; thereafter, audits were made in September and October, 1928, and charge-backs for over-payments were made. These charges on the books for over-payments were made by the Missouri State after the receivership of International and after the assumption or reinsurance contract had been entered into. Appellant says that only International could charge him with over-payments or recover the same; that Missouri State took appellant's account as it stood on the books of International and assumed liability for future payments to appellant; and that the assumption contract did not specifically convey to Missouri State the right to charge back over-payments against his account. No authorities are cited, but reference is made to the terms of the reinsurance contract quoted above. We are of the opinion that the assignment in the reinsurance agreement was sufficient to pass to Missouri State the ownership of the claim for over-payments made to appellant, together with the authority to correct the account and to charge appellant with said over-payments. This is particularly true in view of the following provision of the reinsurance contract:

"Missouri State . . . agrees to recognize and assume contractual obligations of said International Life to pay its agents first year commissions and bonus and renewal commissions on business written prior to the effective date hereof according to the terms, conditions and limitations of said contracts."

Respondent's right to credit is in effect recognized by a stipulation filed in the cause providing that "defendant agrees that so long as plaintiff is not *indebted* to the International or defendant, it will pay plaintiff renewal commissions" on certain business written by appellant prior to the receivership of International.

We hold that Missouri State could abut these over-payments against additional accruals of renewal commissions or bonuses to appellant on business written prior to the assumption contract, and that respondent may recover the excess due.

The judgment is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.