**MARITZ, INC., a Corporation, Appellant,**

v.

**ACF-WRIGLEY STORES, INC., a Corporation, Appellee.**

No. 16432.

United States Court of Appeals
Eighth Circuit.

Oct. 21, 1960.

Lon O. Hocker, St. Louis, Mo., Hocker, Goodwin & MacGreevy, St. Louis, Mo., Lon O. Hocker, St. Louis, Mo., on the brief, for appellant.

Victor A. Wallace, St. Louis, Mo., Barksdale, Abbott & Wallace, St. Louis, Mo., Victor A. Wallace, St. Louis, Mo., on the brief, for appellee.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiff, Maritz, Inc., from final judgment dismissing its complaint wherein it sought to recover damages for loss of profits caused by defendant's alleged wrongful refusal to allow plaintiff to redeem Gold Premium stamps issued while contractual relationships were in effect, but not redeemed prior to the lawful termination of the contract.

Jurisdiction is based upon diversity of citizenship and the requisite amount.

Plaintiff is engaged in the business of providing and servicing trade stamp plans, including the furnishing of premiums to be exchanged for stamps issued. Fred P. Rapp Wholesale Grocer, Inc., hereinafter called Rapp, entered into a written contract with the plaintiff covering a trade stamp plan on or about December 1, 1955. Subsequently, the defendant ACF-Wrigley Stores, Inc., acquired and became successor in interest to Rapp. It is undisputed that defendant has assumed and is liable for all obligations of Rapp to plaintiff.

The contract between plaintiff and Rapp provided that it would be in full force for one year, and that it would be renewed from year to year, unless either party gave notice of termination. Pursuant to this provision, Rapp gave plaintiff timely notice of its intention to terminate the contract on November 30, 1956. Thereafter the parties mutually agreed to a temporary con-

tinuation of the contractual provisions on an "at will" basis. All parties agree that the contract was terminated on July 31, 1957. Plaintiff has been paid in full for all Gold Premium stamps redeemed by it through July 31, 1957.

The issue for determination is whether the plaintiff, under the contract, is entitled to redeem after the termination of the contract the Gold Premium stamps issued by Rapp prior to the contract termination. The stamp redemption feature of the contract is contained in paragraph 6, which reads:

> Maritz agrees to *redeem* all Gold Premium Stamps *issued* by any Rapp retail unit or other retail establishment *designated* by Rapp, *during the term of this Agreement*, on the basis of and in accordance with the terms set forth in the said Gold Premium Stamp Catalog." (Emphasis supplied.)

The contract provided that Rapp employed plaintiff to service a Gold Premium stamp program to be inaugurated by Rapp pursuant to a plan set out in the contract. Plaintiff was to furnish promotional guidance and aid in setting up and carrying out the plan. Rapp agreed to issue one stamp for each ten cents of sales price. Plaintiff agreed to furnish premiums as described in its catalog, and to exchange the stamps Rapp issued for premiums through a mail-order system. Rapp agreed to pay plaintiff $2.00 for each book of 1200 stamps it redeemed. Provision was also made for the payment of transportation costs incurred in mailing premiums to Rapp's customers. The contract expressly provides that all stamps, catalogs, and stamp saver books would be paid for by Rapp and would belong exclusively to Rapp, as well as the right to use the Gold Premium name. Plaintiff agreed to expend $5400 for advertising and promoting the stamp plan. The plan was to run for a period of one year with renewal provisions, and with the right granted either party to terminate after the one year period by giving 60 days notice.

The trial court, in its memorandum opinion, concludes:

> "It is this Court's conclusion that the phrase, 'during the term of this agreement,' found in paragraph 6 of the contract, refers back to plaintiff's agreement to redeem; that this is evident from a reading of said paragraph and from a reading of the entire contract.

> "It is this Court's further conclusion that the evidence introduced, attending and surrounding the negotiations that led up to the contract in question, is to the effect that it was the intention of the parties that the redemptive rights of the plaintiff would be exercised only during the term of the agreement.

> "It is this Court's conclusion that plaintiff herein is not entitled to recover upon its petition for the following reasons:

> "1. The contract, by its terms, provided for termination, and after its termination plaintiff's right to redeem the Gold Premium Stamps ceased.

> "2. The evidence attending and surrounding the negotiation and execution of the contract in question convinces this Court that it was the intention of the parties that plaintiff's right to redeem terminated with the termination of the contract."

The Court's conclusion No. 1 hereinabove is based upon a construction of the contract itself, unaided by extrinsic evidence. It clearly appears that the parties intended the contract between them to be an integrated contract. After some preliminary negotiating conferences, each party called in its attorney for a final conference. After a full discussion of the proposed terms, the attorneys were directed to draft the final contract. Various drafts were prepared, culminating in the contract before us. This contract was approved by counsel for each party, by the parties themselves,

and was properly executed on behalf of each party, and delivered.

█ It is well settled in Missouri and elsewhere that an integrated unambiguous contract cannot be varied by parol evidence. Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 944, 26 A.L.R.2d 278; National Surety Corp. v. Curators of University of Missouri, 8 Cir., 268 F.2d 525, 528.

> "The ordinary meaning of the language used must be given effect and the intention of the parties gathered from a consideration of all provisions of the contract." Isaac T. Cook Co. v. Bank of St. Louis, Mo. App., 297 S.W.2d 607, 610; Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 268.

█ The construction problem here presented is what word in paragraph 6 hereinabove quoted does the phrase, "during the term of this Agreement," modify. Plaintiff in its brief concedes that the phrase could possibly modify any one of three preceding words, which stated in order of their nearness to the phrase, are "designated", "issued", and "redeem". Plaintiff states that if the phrase modifies either "designated" or "issued", it is entitled to recover. Plaintiff urges most strongly that the phrase was intended to modify the word "issued". Plaintiff concedes that if the phrase modifies the word "redeem", it has no cause of action. The plaintiff, in support of the construction that it urges, quotes from Isaac T. Cook Co. v. Bank of St. Louis, supra, 297 S.W.2d at page 610, as follows:

> "It is asserted that a rule of grammar, which is also a rule of law, is that a relative clause relates to the nearest antecedent that will make sense * * *. This 'last antecedent' rule is merely an aid to construction and will not be adhered to where a more remote antecedent is clearly intended."

It is apparent from the above quotation that the rule of grammatical construction is to be used only as an aid to construction. In the Cook case, the court did not apply the "nearest antecedent" rule, the court instead applying the familiar rule that the intention of the parties gathered from a consideration of all the provisions of the contract must prevail.

Plaintiff contends that the contract as written plainly gives it the right to redeem all stamps issued prior to the termination of the contract and that such meaning is made clear by the fourth "whereas" clause, which reads:

> "Whereas, the parties hereto are desirous of agreeing upon the terms, conditions and costs of the plan of redemption by Maritz of all Gold Premium Stamps issued by Rapp during the term of this Agreement."

As to this clause, the trial court states:

> "It is this Court's conclusion that the recital in the fourth 'Whereas' clause of the contract is only a recital as to the 'desire' to agree upon the terms, conditions and costs of the plan of redemption and is not controlling as to the 'time' of redemption."

We agree with the trial court. The quoted clause affords no substantial aid in determining the parties' intention as to the manner in which stamps issued but unredeemed at the time of the termination of the contract are to be handled.

Defendant contends that the contract is ambiguous. There are features about the contract, such as defendant's complete ownership of the stamp plan, the catalogs, the stamps, and the stamp books, and the right given to terminate the contract after one year, which give support to the court's conclusion that the contract by its terms gives plaintiff no right to redeem stamps after the termination of the contract. The issuance of stamps and their redemption for premiums are elements of an integral stamp plan. It could be said that the right of termination includes the right to terminate all features of the contract, including the right to redeem stamps.

The test for determining whether a contract is ambiguous is stated by this court in Massachusetts Bond. & Ins. Co. v. Ray Dilschneider, Inc., 203 F.2d 556, at page 559, as follows:

"It is elementary, of course, that a contract will be regarded as ambiguous, if it is reasonably susceptible of different tenable constructions. Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 267."

The application of this test to the contract before us satisfies us that the contract is reasonably susceptible of different tenable constructions with reference to the time when plaintiff's right to redeem stamps terminates.

A careful consideration of the contract as a whole leaves us in serious doubt as to the contractual intention of the parties with reference to the right of plaintiff to redeem stamps issued but not redeemed at the time of the termination of the contract. Plaintiff's concession that the phrase "during the term of this Agreement" could possibly modify any one of the three antecedent words adds strength to the position that an ambiguity exists in the contract. It follows from our determination that the contract is ambiguous that parol evidence is admissible to aid the court in construing the contract. The trial court wisely admitted parol evidence "so that all testimony might be in the record and available in the event of any review of the decision of this court."

The court, aided by the extrinsic evidence, made a finding heretofore set out that the consideration of such evidence convinced it that the contracting parties intended that plaintiff's right to redeem the stamps ended upon the termination of the contract. Plaintiff, as a basis for reversal, says that the court committed error in such finding and determination, and urges that the evidence conclusively establishes plaintiff's right to redeem all stamps issued by Rapp during the first year of the contract.

The rules to be applied in interpreting ambiguous contracts appear to be well established. This court, in the Massachusetts Bonding case, supra, 203 F.2d at page 559, states:

"[U]nder Missouri law, where an ambiguity exists in a contract provision, and where the ambiguity cannot be dispelled by a reference to other parts of the contract merely or by a legal appraisal of uncontroverted surrounding circumstances only, the meaning of the provision is a matter for the jury, as a question of resolving factually what the intention of the parties and the terms of the agreement should be regarded as having been."

In Veatch v. Black, 363 Mo. 190, 250 S.W.2d 501, at page 507, the court states:

"A contract of doubtful meaning will be given a construction which will make it fair and reasonable between the parties and will not give one party an unfair advantage of another. Mecartney v. Guardian Trust Co., 274 Mo. 224, 202 S.W. 1131, 1134 [2]. 'Common sense and good faith are the leading characteristics of all interpretations.' Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 268 [5–7]. Consideration is given to the contract as a whole and the fundamental rule for construing its language is to ascertain and give effect to the intention of the parties. Paisley v. Lucas, supra; Larson v. Crescent Planing Mill Co., Mo.App., 218 S.W.2d 814, 819 [2]. Greater regard is given the clear intention of the parties than the particular words used in attempting to express it. Larson v. Crescent Planing Mill Co., supra; Rickey v. New York Life Ins. Co., 229 Mo.App. 1226, 71 S.W.2d 88, 93. The court considers the relationship of the parties, the subject matter of the contract, the usages of the business, the surrounding facts and circumstances leading up to and attending its execution, and the apparent purpose which the parties were undertaking to accomplish."

See also A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co., D.C., 108 F.Supp. 644, 648.

We now consider the evidence in the light of the legal principles just stated. Plaintiff, in support of the construction for which it contends, places considerable reliance upon the evidence it offered to the effect that its vice-president Burton had prepared and had with him at the last contract negotiating meeting a memorandum setting out the terms of the proposed contract, one of the items on said memorandum reading:

"Fred P. Rapp, Incorporated agrees further that all stamps issued by them during the first year will be redeemed by Maritz Sales Builders on the terms outlined in previous paragraphs of this agreement."

Plaintiff offered testimony tending to show that some copies of this memorandum were passed out at the meeting. The only witness who testified positively that the memorandum came into the hands of any Rapp representative is Maritz, who stated that Rapp's attorney Barksdale received a copy of it. Rapp's representatives generally denied that they had been provided with a copy of the memorandum. Upon this conflicting testimony, it is apparent from the trial court's opinion that it credited the defendant's testimony to the effect that none of Rapp's representatives had received a copy of the memorandum.

Various witnesses who represented the defendant in the contract negotiations testified that paragraph 6 of the contract was neither emphasized nor explained at the negotiation conferences, and that the Rapp representatives at no time contemplated that plaintiff should have the right to redeem any stamps after the termination of the contract. Rapp's representatives further testified that any such arrangement would not be feasible, and would create great confusion and dissatisfaction among Rapp's customers, and would defeat the purposes of a stamp plan. A typical example of such evidence is the following testimony given by Fred P. Rapp, Sr.:

"Q. 'Mr. Rapp, bearing in mind that you have just explained as the purpose or object of the stamp plan and this stamp plan, what would be the effect on Rapp's customers if, after you stopped issuing Gold Premium stamps, the Maritz Company continued to redeem those stamps and at the same time you had begun to issue Gold Bell gift stamps and Gold Bell Gift Stamp Company was redeeming those stamps?'"

"Q. (By Mr. Wallace) Do you understand that? A. Yes, well, certainly, there would be a lot of confusion. When you do something like that, people have been saving stamps for a long time and they have their eye on a certain premium which may take three books, five books or ten books and if you would cut something off the customer is in a turmoil; he doesn't know what to do; where, on the other hand, if your new stamp plan is put into effect and you can mix the new stamps with the old stamps in filling these books, it is more automatic and there is hardly any confusion; but if you discontinue a stamp plan, I just think you just aggravate lots and lots of customers and it is just confusing all the way through.

\*     \*     \*     \*     \*     \*

"The Court: All right. Now, the point I want to know is, did you, which you expressed in your answer a while ago, did you have that viewpoint on the situation in the operation of the plan in the event of stoppage and redeeming separately at one time while you were issuing other stamps, did you have that viewpoint at the time you signed the contract? A. Definitely, definitely, sure, as far as I and my son, Gerald, were concerned, this was a temporary set-up, as far as our stamp plan was concerned. It was not the answer to a good stamp plan."

It was also pointed out that the completion of the stamp redemption under plaintiff's theory might remain open and

unsettled for many years. There is often considerable delay in turning in stamps for redemption and some stamps are never redeemed.

It is apparent from the evidence that Rapp became uneasy because its competitors were using stamp plans and that it was in a rush to adopt a plan to meet competition. Rapp's representatives made it clear that the arrangement it was making with the plaintiff was a temporary one and that other plans were under consideration. Rapp agreed, because of the $5400 advertising contribution provision, that the plan would be in effect for a year. That such a period was ample to protect plaintiff's investment is shown by the evidence that plaintiff made a profit of $35,000 on the plan during the 18 months it was in operation. In the prolonged negotiations leading up to the contract, plaintiff no doubt obtained much information about the extent of Rapp's business, and through experience would likely be able to approximate the returns to be derived therefrom.

After defendant abandoned plaintiff's stamp plan, it used the Gold Bell stamp plan and later the S & H Green Stamp plan. In connection with each of said plan changes, defendant contracted that prior trade stamps issued by it could be used at face value by its customers on the new stamp premium plan.

The evidence shows that much of the good will that a stamp plan is designed to create would be seriously undermined if previously issued stamps could not be used under the new plan. Rapp's representatives were aware of this situation, and state definitely that they did not agree that the plaintiff's right to redeem stamps would continue beyond the termination date of the contract. It would also appear that the plaintiff, with its familiarity with stamp plan operation, would also be aware of the fact that Rapp did not intend for plaintiff to redeem stamps after the termination of the contract.

We believe that there is substantial evidence to support the fact findings of the trial court, and that the court reached a permissible conclusion in determining that the contracting parties did not intend that the right of the plaintiff to redeem stamps issued by Rapp would continue beyond the date of the termination of the contract as a whole.

The judgment is affirmed.