**J. S. ALBERICI CONSTRUCTION CO., INC., Appellant-Respondent,**

v.

**EMERSON ELECTRIC COMPANY, Respondent-Appellant.**

**Nos. 35958, 36037.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

May 11, 1976.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Donald L. James, James E. Whaley, St. Louis, for appellant.

Millar, Schaffer, Ebling & Wallace, Samuel C. Ebling, John B. Lewis, St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

J. S. Alberici Construction Co., Inc. (hereafter referred to as "Alberici") filed suit in two counts against Emerson Electric Company (hereafter referred to as "Emerson"). A separate trial was ordered as to Count I, and judgment in the amount of $121,386.64, plus accrued interest in the amount of $29,739.73, was entered in favor of plaintiff. Each party appealed, a single transcript has been filed, and the appeals have been consolidated in this court.

Alberici's cause of action is based on a written contract whereby it was to be paid at the unit prices set forth therein for the excavation of various types of material. Alberici contends that it was entitled to payment at $29 per cubic yard for the excavation of 15,403.6 cubic yards of what it contends constituted "rock or stone in original ledge." Emerson, on the other hand, asserts in its brief that "the excavation was machine excavation at [$]0.29 per cubic yard." The contract is somewhat lengthy, and we shall set forth verbatim only those provisions necessary to present the issues for determination.

The contract was for the performance of general construction work for the Lighting and Sciences Building for Emerson located at 8100 West Florissant Boulevard, City of St. Louis. Item 8 of the contract, entitled "Rock Excavation," contains "Definitions" as follows:

1. The excavation of the following items, if they cannot be broken and removed by power excavation equipment and require the use of systematic drilling and explosives is defined as "Rock Excavation" and will be paid for as an extra in accordance with the "Unit Price Schedule" in the Form of Proposal. When such material is encountered, it shall be uncovered and exposed and the Architect notified so that proper and complete measurement can be made prior to removal of such.

   (a) Rock or stone in original ledge.

   (b) Hard shale in original ledge.

(c) Boulders over two (2) cubic yards in open excavation and one-half (½) cubic yards in trenches.

2. Boulders, ledge and other obstructions over two (2) cubic yards in open excavation and over one-half (½) cubic yards in trenches that are removed by power excavation equipment without use of drills and/or explosives, will be paid for as an extra in accordance with the "Unit Price Schedule" in the Form of Proposal.

An addendum to the contract set forth the "Unit Price" as follows:

A. Price per cu. yd. for more or less building excavation, including disposal, not shown on plans or specified.
   1. Machine excavation (neat)  $ 0.29
   2. Hand excavation (neat)  $ 7.15
      *    *    *    *

D. Price per cubic yard for removal of more or less rock or stone in original ledge. Base bid includes removal of 1000 cubic yards.  $29.00
      *    *    *    *

F. Price per cubic yard for removal of more or less boulders over two (2) cubic yards in open excavation and over one-half (½) cubic yards in trenches. Base bid includes removal of 500 cubic yards.  $ 7.40

At a conference between the court and counsel it was agreed that the "material involved * * * is a sandstone material," that Emerson "has no indication" that the amount of material for which payment was sought by Alberici was not as claimed, that in the excavation of the material no "drilling or blasting" was done, and that the excavated material was removed "by mechanical means" consisting of a "D–9 Caterpillar with Kelly ripper attached" which constituted "power excavating equipment."

The court ruled that the contract was not ambiguous, that the unit price of $29 is "applicable to Paragraph 1 of Specification 8 defining rock specifications," that the unit price of $7.40 is "applicable to Subpara-

graph 2 of Specification 8," that Subparagraph 2 "is a specification which is applicable to boulders, ledges and other obstructions which may be removed by power equipment" and "in view of the stipulated facts that the material involved * * * was removed by power equipment and was not removed by blasting or drilling, * * the $7.40 per yard rate is applicable to the excavation in dispute in this case." The court then discharged the jury and entered what we might call summary judgment based on stipulated facts. Each party offered evidence in the form of an offer of proof to demonstrate that the contract was ambiguous. On this appeal, however, Alberici makes no such contention. Instead it asserts that the contract is not ambiguous, and that the trial court should have held the $29 unit rate to be applicable, and therefore it erred in its construction of the "clear meaning of the total contract."

Subparagraph 1 of Paragraph 8 defines the term "rock excavation" as the excavation (a) of rock or stone in original ledge, (b) of hard shale in original ledge, and (c) of boulders over two cubic yards when in open excavation and boulders over one-half cubic yards when in trenches, when these items cannot be broken and removed by power excavation equipment but requires the use of systematic drilling and explosives. Subparagraph 2 defines the operation of excavating by use of power excavation equipment without the use of drills or explosives when that excavation is limited to "boulders, ledge and other obstructions" which are over two cubic yards in size and when they are in "open excavation" or over one-half cubic yards when "in trenches."

We turn now to Addendum No. 2 which sets forth the "Unit Prices," and we first comment that although in each of the above Subparagraphs of Paragraph 8 it is provided that the operation there described should be paid for "as an extra in accordance with the 'Unit Price Schedule' in the Form of Proposal," there is no "Unit Price" which describes precisely the operation defined in either Subparagraph.

Item A provides for a payment of $0.29 per cubic yard "for more or less building excavation \* \* \* not shown on plans or specified." Emerson contends that the excavation done by Alberici for which payment is requested should be paid for at this rate. However, we find nothing in the record to indicate whether the excavation was "building excavation," whatever that term means, or whether the excavation was or was not "shown on plans or specified."

Item D provides for a payment of $29 per cubic yard for the "removal of more or less rock or stone in original ledge." We note that nothing is said as to whether the removal is to be by power excavation equipment or by systematic drilling and explosives. Presumably, this rate would apply without regard to the method of removal. The record, by reason of the stipulations, shows that the material excavated was "sandstone material." There is nothing in the record to indicate whether it was or was not the intention of the parties, or that it is generally understood in the industry, that the removal of "sandstone material" is included in the term "removal of more or less rock or stone in original ledge."

Item F provides for a payment of $7.40 for the removal (again without limitation as to the method) of "more or less boulders" over two cubic yards in open excavation and over one-half cubic yards in trenches. We note that Subparagraph 2 of Paragraph 8 refers to "boulders, ledge and other obstructions," while Item F refers only to boulders. The record does not disclose whether the term "ledge and other obstructions" was intended to include sandstone. It is admitted by Alberici that it did not excavate any two-cubic yard boulders, and there is no contention that there was any trench excavation. The trial court held that the payment provided for by Item F was applicable to the operation described in Subparagraph 2 of Paragraph 8, and that the "Unit Price" in Item F was the price to be paid for the excavation work performed by Alberici. Both parties on this appeal contend that this determination is not correct, but for different reasons.

Emerson contends that the trial court erred in its determination that the contract was not ambiguous. Emerson asserts the contract was reasonably susceptible of differing and opposing constructions, and therefore the court erred in discharging the jury. In this we agree.

We need not elaborate on the applicable general rules. It is sufficient to say that if the terms of a contract are clear and unambiguous the contract will be enforced according to its terms and without construction to determine the intention of the parties. *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833, 851 (Mo. banc 1960). But, where the contract is ambiguous, and what we have previously stated clearly demonstrates that ambiguity, then in order to obtain the intention of the parties, *Robson v. United Pacific Insurance Company*, 391 S.W.2d 855 (Mo.1965), the contract is subject to construction according to certain established rules, some of which are the interpretation placed on the contract by the parties, *Landau v. Laughren*, 357 S.W.2d 74 (Mo.1962), the surrounding circumstances, *Paisley v. Lucus*, 346 Mo. 827, 143 S.W.2d 262 (1940), and the generally accepted meaning in the industry of the words and phrases used.

The judgment is reversed and the cause remanded.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.