**WESTERN TANEY COUNTY FIRE PROTECTION DISTRICT, Appellant,**

v.

**CITY OF BRANSON, MISSOURI, Respondent.**

**No. SD 30668.**

Missouri Court of Appeals, Southern District, Division Two.

Feb. 10, 2011.

Motion for Rehearing or Transfer to Supreme Court Denied March 4, 2011.

Application for Transfer Denied April 26, 2011.

Patricia Keck, Jason Coatney, Springfield, for Appellant.

Jay M. Dade, John C. Holstein, Polsinelli Shughart, PC, Springfield, for Respondent.

DANIEL E. SCOTT, Chief Judge.

Appellant Western Taney County Fire Protection District ("District") is a duly organized fire protection district authorized to tax property within its boundaries in support of its services. Respondent City of Branson ("City") likewise has taxing authority and a fire department.

From time to time through 1994, City annexed property within District's boundaries, resulting in duplication of fire protection services and double taxation in the overlapped areas.

In 1994, City and District entered into an "Agreement Concerning Provision of Fire Protection Services" ("Agreement") to eliminate overlapping boundaries, avoid double taxation and double service, and provide adequate fire protection services for both City and District. The Agreement included these provisions:

2. In the event THE CITY'S corporate limits extend by future annexations, THE CITY will provide the exclusive fire protection services to all additional areas annexed into THE CITY'S corporate limits.

. . .

7. [DISTRICT] agrees to cease taxing the areas that are within the corporate limits of THE CITY on December 31, 1994. In the event of future annexations by THE CITY which bring new property into the corporate limits of THE CITY, which are at that time being served by [DIS-

TRICT], [DISTRICT] will be allowed to continue taxing said property until December 31st of the year in which they [sic] annexation occurs. Beginning January 1 of the following year, [DISTRICT] will cease taxing said areas.

8. As consideration for this Agreement and the transfer of the property as outlined herein,[1] THE CITY agrees to pay [DISTRICT] FOUR HUNDRED SIXTEEN THOUSAND SIX HUNDRED AND SIXTY–SIX DOLLARS AND SIXTY–SIX CENTS ($416,666.66) per year for three (3) years beginning in 1995 and continuing through 1997.

Both parties performed their contractual obligations, including City's total payment to District of $1.25 million (3 × $416,666.66).

City later annexed other property within District's boundaries. District sought more money per § 321.322 RSMo, a statute known to both parties when they made the Agreement.[2] City refused further payment on the ground that such claims fell within the Agreement and were satisfied by City's payments thereunder.

District sued, a stipulation of facts was filed, and the parties filed cross-motions for summary judgment. The trial court found that the Agreement was one contemplated and authorized by § 321.322; it unambiguously provided for future annexations by City; valuable consideration had been paid in full; and District was entitled to no further compensation. The court granted City's summary judgment motion, denied District's motion, and entered judgment accordingly.

District appeals. Our review is *de novo. Henslee v. Cameron Mut. Ins. Co.*, 292 S.W.3d 476, 477 (Mo.App.2009).

## Analysis

Annexation issues like these are the focus of § 321.322, which was enacted in

---

1. The Agreement also called for District to transfer title to a fire station valued at $155,000. City made the payments as required, and District transferred title to the fire station.

2. Section 321.322.1 provides, in relevant part: If any property located within the boundaries of a fire protection district shall be included within a city ... then upon the date of actual inclusion of the property within the city, as determined by the annexation process, the city shall within sixty days assume by contract with the fire protection district all responsibility for payment in a lump sum or in installments an amount mutually agreed upon by the fire protection district and the city for the city to cover all obligations of the fire protection district to the area included within the city, and thereupon the fire protection district shall convey to the city the title, free and clear of all liens or encumbrances of any kind or nature, any such tangible real and personal property of the fire protection district as may be agreed upon, which is located within the part of the fire protection district located within the corporate limits of the city with full power in the city to use and dispose of such tangible real and personal property as the city deems best in the public interest, and the fire protection district shall no longer levy and collect any tax upon the property included within the corporate limits of the city; except that, if the city and the fire protection district cannot mutually agree to such an arrangement, then the city shall assume responsibility for fire protection in the annexed area on or before January first of the third calendar year following the actual inclusion of the property within the city, as determined by the annexation process, and furthermore the fire protection district shall not levy and collect any tax upon that property included within the corporate limits of the city after the date of inclusion of that property: *[followed by a formula for the city to pay fees to the fire protection district based on descending tax payments over a five-year period].*

1985 and has been amended six times.[3] Under the statute, a city assumes fire protection duties for annexed property and pays the fire protection district either "an amount mutually agreed upon," or if no agreement is reached, fees under the statutory formula.

District's primary argument here, as in the trial court, is that the statute also evinces a " 'sixty days' statutory mandate" forbidding agreements as to future annexations and negating agreements "outside the statutory 60 day window." District cites this part of § 321.322 (our emphasis):

> upon the date of actual inclusion of the property within the city, as determined by the annexation process, the city shall *within sixty days assume by contract* with the fire protection district all responsibility for payment in a lump sum or in installments an amount mutually agreed upon by the fire protection district and the city for the city to cover all obligations of the fire protection district to the area included within the city. . . .

We have fully considered the parties' excellent oral and written presentations and agree with District's bottom-line conclusion[4] that City prevails if § 321.322's "within sixty days" text does not invalidate or supersede the Agreement as to post-1994 annexations. Such admirably candid framing of the key issue enables us to be equally concise. The statutory text does not *per se* invalidate or negate such contracts as to annexations more than 60 days post-contract, nor are we persuaded to construe the statute in such fashion.

Having stated the "big picture," we address District's statutory, contractual, and other arguments in turn.

### Statutory Argument

■ Section 321.322 is not a model of concise or cogent drafting, but its basic procedure is clear enough. A statutory compensation scheme is triggered unless a city contractually assumes, within 60 days of the effective annexation date, responsibility to pay other mutually-agreed consideration. District goes further, however, in urging that the statute *prohibits* the making of agreements outside that 60–day period and *invalidates* any contracts so made.

We do not so narrowly read the statutory text, which does not state that it invalidates anything and expresses only one prohibition: "Nothing contained in this section shall prohibit the ability of a city to negotiate contracts with a fire protection district for mutually agreeable services." Moreover, one can "assume by contract" future obligations, or can contract now to render future performance within 60 days of an event that may not occur for months, or years, or ever.

The question is not whether § 321.322 authorizes the Agreement, but whether the statute forbids it. We conclude that it does not.

### Contractual Arguments

■ We also reject two contract-based arguments made by District. One is that the Agreement "does not address whether it extends to future annexations; it simply confirms the parties [sic] understanding that they will not again get into the situation of double coverage and double taxation." This is rebutted by the Agreement's explicit references to "future annexations" and what would happen in those situations.

---

**3.** The post-Agreement amendments in 1999 and 2005 did not change the statutory language relevant to this case.

**4.** Subject to caveats considered under "Other Arguments" below.

District also claims the City's payments totaling $1.25 million were merely for pre-Agreement annexations. Yet paragraph 8 of the Agreement, which District quotes only in part, also describes the City's payments as "consideration for this Agreement." The Agreement as a whole ties together interrelated issues of payments to District, taxation, and fire protection responsibilities. District's contract-based arguments are not persuasive.

## Other Arguments

Finally, District urges that even if the Agreement complies with § 321.322, it violates Article 10, §§ 1 & 2 of the Missouri Constitution and the common law rule against perpetual contracts.

■ District claims that the cited constitutional sections,[5] read together, prohibit District "from contracting away" its taxing power without specific legislative authority. Yet our legislature, via § 321.322, *has* authorized contracts of this nature.[6] Moreover, the Agreement did not contract away either party's power to tax; it addressed wasteful service duplication and inappropriate double taxation.

■ District's perpetual contract argument fails as well. A contract for an indefinite term is not necessarily perpetual. *See Paisley v. Lucas*, 346 Mo. 827, 143 S.W.2d 262, 270–71 (1940).[7] Missouri courts are prone to reject theories that a contract creates perpetual obligations or rights. *Id.* at 270; *Armstrong Business*

*Services, Inc. v. H & R Block*, 96 S.W.3d 867, 875 (Mo.App.2002). We will so construe a contract only if its language "*compels* that construction." *Superior Concrete Accessories v. Kemper*, 284 S.W.2d 482, 490 (Mo.1955)(citing cases, including *Paisley*). Such intention "must be unequivocally expressed." *Armstrong Business Services*, 96 S.W.3d at 875. Only in such negative promises as to forbear suit or not to carry on a business or occupation is so broad an interpretation likely to be permissible. *Superior Concrete Accessories*, 284 S.W.2d at 490 (citing Williston on Contracts). The Agreement between City and District cannot be said to fit these descriptions.

## Conclusion

Our *de novo* review confirms the propriety of the trial court's decision. Judgment affirmed.

BATES and FRANCIS, JJ., concur.

---

**5.** Article 10, § 1 reads: "The taxing power may be exercised by the general assembly for state purposes, and by counties and other political subdivisions under power granted to them by the general assembly for county, municipal and other corporate purposes." Article 10, § 2 provides: "The power to tax shall not be surrendered, suspended or contracted away, except as authorized by this constitution."

**6.** The statutory issue here was whether § 321.322 bars *pre-annexation* agreements. We have concluded otherwise.

**7.** *Paisley*, overruled on other grounds by *Novak v. Baumann*, 329 S.W.2d 732, 733 (Mo. 1959), remains oft-quoted in cases considering "perpetual" contract claims.